HALL *v.* VILLAGE OF MONTAGUE.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—VILLAGE MARSHAL—SCOPE OF EMPLOYMENT.

A village marshal and street commissioner who was accidentally electrocuted by coming in contact with a high voltage wire while climbing a pole in the village street, not owned by the village, for the purpose of fastening thereto one end of a home coming banner, which stretched across the street, at the request of a citizen, who was chairman of the home coming committee, was not acting within the ambit of his employment at the time he met his death and, therefore, the village was not liable therefor under the workmen's compensation act.[1]

Certiorari to Department of Labor and Industry. Submitted June 6, 1924. (Docket No. 81.) Decided October 6, 1924.

Edna Hall and another presented their claim for compensation against the village of Montague for the accidental death of their decedent in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed, and order vacated.

*Cross, Foote & Sessions,* for appellant.

*Alex. Sutherland,* for appellees.

MOORE, J. Edna Hall, widow of deceased, presented her claim for compensation against the village of Montague for the accidental killing of Charles Hall, on August 15, 1923, while he was in the employ of defendant as village marshal and street commissioner. The sole defense relied on was that the accident did

[1] Workmen's Compensation Acts, Ann. C. J., Cyc. (1921), p. 1193, § 73.

For authorities discussing the question as to injuries arising out of and in the course of the employment, in general, see notes in L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

not arise out of and in the course of deceased's employment. A hearing was had before a deputy commissioner who denied compensation. Plaintiff appealed to the department of labor and industry, and the award of the deputy commissioner on arbitration was reversed and compensation granted at the rate of $14 per week for 300 weeks, and $200 for funeral expenses. The case is in this court for review.

Counsel are agreed that the disposition of the case depends on whether Mr. Hall was engaged in the scope of his employment when the accident happened. The facts are not very complicated.

Annual celebrations called "home coming" had been conducted in the village of Montague for upwards of 12 years. These celebrations were promoted by a committee of citizens, the village council doing no more than to permit the use of the streets for that purpose and upon request to appoint assistant marshals to preserve order. In June, 1923, a number of the citizens met in the office of the Farmers State Bank to promote a home coming celebration for 1923. They fixed August 8th as the date on which the home coming should be held. At its meeting on July 2, 1923, the village council adopted a motion reading as follows:

"Moved by Christians, supported by Farrell, that no set of individuals be permitted to conduct a home coming, but same to be under direction of the village council. Carried."

The record shows this resolution was adopted partly for the reason that bills had on previous occasions been presented to the village for the cost of cleaning the streets after the home coming was over, and for the pay of the special marshals which were appointed, but the primary reason was that a new highway was under construction, and a new consolidated schoolhouse was in process of erection, and it was expected they would both be completed soon, and it was desired

to have a celebration in honor of their completion at the same time as the home coming.   As a result of the adoption of the resolution we have quoted, and perhaps for other reasons, the time of the home coming was postponed from the 8th day of August.

During the summer of 1923, there was in Montague what was known as the Montague Progressive Club. This club had a meeting on July 9th.   The minutes of that meeting read in part as follows:

"July 9, 1923.   A July meeting of the M. P. C. was held on the above date at Clarence's resort with 30 members and guests present, with W. E. Osmun as chairman.   After partaking of an excellant supper the business of the evening was taken up.   Chairman Osmun presented the matter of a home coming for this summer and asked for remarks, suggesting that the people who have moved from Montague would be pleased to see the new road and schoolhouse, and after some little discussion a motion was made by Dr. Smith, which was seconded and carried, that the P. C. get behind the movement and give it our unqualified support.   Anderson then made a motion, which was seconded and carried, that the chair appoint a committee or committees to confer with council in connection with home coming.   Chair will appoint committee later.   *   *   *

"Motion by John Capek, seconded and carried that we hold next meeting three weeks from tonight. Motion to adjourn.

"A. ANDERSON, Secretary."

Later the chairman appointed a committee of which Mr. Blackburn was chairman.   Some confusion has arisen because Mr. Osmun was not only president of the Progressive Club, but was also president of the village, but he testified that in appointing this committee he was acting for the Progressive Club, and the record does not show the council ever authorized the appointment of any committee.   The committee which was appointed had an informal conference with the village council.   It had then been learned that the

schoolhouse and the highway would not be completed as soon as had been expected. The citizens were then authorized to go on with the home coming upon condition that the streets should be cleaned up, or the cleaning should be paid for, and the two special marshals which it was desired should be appointed should also be paid. This was agreed to and the agreement was afterwards carried out. From that time on the village authorities had nothing more to do with the venture.

The people who had managed the home coming in previous years had a "home coming" banner, and Mr. Blackburn some days before the 15th of August requested Mr. Hall to help place the banner across the street. This was done by Mr. Hall fastening one end of it to a pole carrying electric light wires with a low voltage of electricity, while Mr. Garnet fastened the other end of the banner to a pole which was strung with a wire or wires carrying a high voltage of electricity. Evidently Mr. Garnet did not succeed in making a good fastening for that end of the banner dropped into the street and the banner was gathered into a bundle and put at the foot of the pole to which one end of it was yet attached.

On the 15th of August at the request of Mr. Blackburn the rope attached to the loose end of the banner was thrown over his shoulder by Mr. Hall and he started to climb the pole to put the banner again in place. As he was doing this he came in contact with the high voltage wire and soon after slid to the ground on one of the guy wires and was dead. The pole he was then climbing was not owned by the village but was owned by the White River Power & Light Company, and the village had no electric light wires strung within a half block of it. Mr. Hall knew the pole was carrying high tension wires, and had been cautioned in relation to them.

In its return the commission uses the following language:

"What remuneration beyond prestige the village of Montague received from these home comings is not definitely stated but the president states that money was received and that the village got its money."

The commission evidently misunderstood the testimony, for the record shows beyond any question that when any money was received it was deposited in the local bank to the credit of "home coming." Twenty checks were introduced in evidence showing how the money was paid out and for what purpose, and at the time of the trial there was a balance in the fund of $124.62, to the credit of "home coming."

In its findings the commission uses the following language:

"Mr. Hall to be of service to the village and its people was to use his own judgment in most matters. He was a servant of the people and to be such was appointed by the village council. He had the spurs for climbing, in which he was engaged at the time of his death. Prior to the home coming celebration two extra marshals were appointed to assist him.

"The commission therefore finds:

"1. That the accident was one that arose out of the general responsibilities of Mr. Hall and he was at the time of the accident within the ambit of his employment."

It is true Mr. Hall was a servant of the people and was appointed by the village council, but there is nothing in either of those facts which would make the village liable for what he did on the 15th of August. If he had said to Mr. Blackburn: "I would be glad to oblige you but I must decline to climb a pole the city does not own, and which carries a wire of high voltage," no one could have justly criticized him for a failure to do his full official duty.

The accident was very unfortunate and awakens

our sympathy for his family, but if there is any liability it must grow out of the provisions of the statute. To create liability two facts must be shown.    *First*, that Mr. Hall was an employee; *second*, that the accident happened while he was in the ambit of his employment.    The first of these facts is shown.    The second one is not shown.    The case is within the principles stated in *Bischoff* v. *Foundry Co.*, 190 Mich. 233; *Draper* v. *Regents of University*, 195 Mich. 449; *Ballman* v. *D'Arcy Spring Co.*, 221 Mich. 582; *Sichterman* v. *Kent Storage Co.*, 217 Mich. 364 (20 A. L. R. 309), and the many cases cited therein.

The award is set aside, but without costs to either party.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.