T. J. COYNE, APPELLANT, V. CITY OF O'NEILL ET AL., APPELLEES.

298 N. W. 547

FILED JUNE 6, 1941. No. 31201.

*J. J. Harrington*, for appellant.

*Julius D. Cronin, Kennedy, Holland, DeLacy & Svoboda* and *Edwin Cassem, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is a suit for the recovery of benefits claimed to be due under the workmen's compensation law. The trial court entered an order dismissing plaintiff's petition, and plaintiff appeals.

On May 2, 1939, plaintiff was appointed chief of police of the city of O'Neill, Nebraska. On May 10, 1939, plaintiff went to the home of Mrs. S. J. Weekes in O'Neill in response to a call to take her to an early morning train. In going from his car to her residence he tripped and fell, causing the injuries for which he claims he is entitled to an award. Plaintiff testified that he was looking for a prowler or burglar at the time of his injury, and that the injury therefore arose out of and in the course of his employment as chief of police.

The record shows that satisfactory taxi service did not exist in O'Neill, and that it had become customary to call upon the chief of police to obtain transportation to and from the night trains operating to and from the city. To obtain this service it was customary to call the Golden Hotel and inform the clerk that transportation was desired. The clerk would then call the police by turning on a red light located on the front of the hotel building and convey the message to the policeman when he appeared in answer to this signal. The evidence shows that Mrs. Weekes made arrangements for transportation late in the afternoon of the day in question. At about 10:30 p. m., she again called the clerk at the hotel and requested that plaintiff be notified of her desire for transportation to the 1:09 a. m. train. According to the evidence of Mrs Weekes, plaintiff did not respond to this call, and about 12:55 p. m. she again called the hotel clerk. The clerk turned on the police signal, then waited at the curb until plaintiff drove up in his car and told him that Mrs. Weekes wanted him to come to her residence at once. Plaintiff hurried away without having gotten out of his car. Plaintiff contends that it was only 12:45 p. m., and as ample time remained for Mrs. Weekes to catch her train, he assumed that her last call was for protection against a prowler or burglar. An examination of the record will not sustain such a finding. It is clear to us that plaintiff went to the Weekes home in response to her previous calls for the purpose of transporting her to the train, and that no reason existed for the assumption testified to

by the plaintiff that burglars or prowlers were lurking in the vicinity of Mrs. Weekes' home. The evidence sustains the conclusion arrived at by the trial court that plaintiff went to the Weekes residence for the purpose of taking Mrs. Weekes to the 1:09 a. m. train.

Plaintiff contends that it was one of his duties as chief of police to convey persons to and from trains arriving in O'Neill late at night or early in the morning. There is no ordinance in evidence to sustain any such contention. Neither are there any minutes of the city council in evidence that indicate that any such duties were lawfully assigned to him. There is evidence that his predecessor as chief of police had engaged in transporting persons, for hire, to and from trains. Various city officials, including the mayor and a city councilman, testified that they understood the chief of police was to perform this service and that they had no knowledge that fare was to be collected therefor.

A muncipality in this state is without power to engage in the taxi business. It seems clear to us, therefore, that plaintiff stepped outside the scope of his employment when he undertook to take Mrs. Weekes to the train, and was at the time engaged in a mission of his own for the accommodation of Mrs. Weekes and not one lawfully imposed upon him as an employee of the city. The mere fact that taxi service was lacking in O'Neill is insufficient to authorize the use of powers not otherwise granted by law. For the city to be liable for the payment of benefits under the compensation law, the plaintiff must have sustained an accident in the regular trade, business, profession or vocation of the employer city. Comp. St. 1929, sec. 48-106. Plaintiff was from a legal standpoint engaged in an errand of his own not arising out of or in the course of his employment. This view is sustained by the following cases: *Hammond v. Keim,* 128 Neb. 310, 258 N. W. 478; *Babcock v. School District,* 123 Neb. 491, 243 N. W. 831; *Hall v. Village of Montague,* 228 Mich. 484, 200 N. W. 133; *Norman v. City of Chariton,* 206 Ia. 790, 221 N. W. 481.

Plaintiff contends that a raise in salary of $5 a month

was given to the chief of police on May 8, 1935, for "gas and oil" and that this is evidence that the duty of transporting persons to and from trains was lawfully imposed upon the chief of police. It appears to us that the use of gas and oil is just as consistent with the use of an automobile in performing the ordinary functions of a chief of police as with the purposes which plaintiff claims that it evidences. Assuming *arguendo* that the city could in this manner add to the duties of the chief of police, we cannot say that this evidence is sufficient to accomplish that result.

After a consideration of all the evidence, we conclude that plaintiff at the time of his injury was not engaged in the performance of any act arising out of or in the course of his employment. The transportation of persons to and from trains not being any part of the regular trade, business, profession or vocation of the city of O'Neill under the law of this state, the plaintiff in so doing could not be an employee within the meaning of the workmen's compensation act. The trial court was correct in so holding.

AFFIRMED.