HERSCHEL L. BABCOCK, APPELLANT, V. SCHOOL DISTRICT
NO. 107, APPELLEE.

FILED JULY 8, 1932.   NO. 28328.

*J. W. Kinsinger, H. C. Henderson* and *Lincoln Frost, Jr.,* for appellant.

*Kennedy, Holland & De Lacy, Edward J. Svoboda* and *Slama & Donato,* contra.

Heard before GOSS, C. J., DEAN, EBERLY, DAY and PAINE, JJ., and BEGLEY and BLACKLEDGE, District Judges.

EBERLY, J.

This is an action by Herschel L. Babcock, under the workmen's compensation act of the state of Nebraska, against School District No. 107, Cedar Bluffs, Nebraska. Before the compensation commissioner, Babcock, in the capacity of a duly employed teacher and superintendent of schools of the defendant district, received a favorable award. On appeal to the district court, that court found "that Herschel L. Babcock sustained an injury as the result of an accident on the 22d day of September, 1928;" that the said accident and injury did not arise out of and in the course of the employment of plaintiff; that the said petition for compensation was filed on the 4th day of January, 1930, before the compensation commissioner; that the claim for compensation for the injury in said petition set forth is barred because not filed within one year from the date of the happening of said accident; and the district court denied the application. Plaintiff appeals.

Plaintiff now predicates his recovery solely because of personal injury arising out of and in the course of employment by the defendant district, as superintendent of schools, which injury complained of was a compound fracture of the left femur received in an automobile accident on the 22d day of September, 1928.

The contract of employment, dated March 6, 1928, was in writing and received in evidence. It is in the prescribed form as required by "Section 74, article 4, School Laws." By its terms Babcock agrees "to teach the school of said district in a faithful and efficient manner for the term of nine months commencing on the 3d day of September, 1928," and he also undertakes "in all things to observe the rules and regulations of the district board." There is no evidence in the record as to the adoption of any "rules and regulations" by the district board.

Babcock testifies that his general duties were "to take care of the general running of the school; supervision * * * teaching, and ordering of supplies," viz., textbooks, papers, pencils, ink, chalk, janitor supplies, anything in connection with the school with the exception of coal; and that he had "ordered everything that was ordered" for this term.

Appearing as part of the evidence introduced is an invoice of the Omaha School Supply Company, Omaha, Nebraska, dated "9-22-28," setting forth that it had "sold to Mr. H. L. Babcock, Superintendent, Cedar Bluffs, Nebraska, 1-50 lb. drum chemical toilet powder .13—$6.50;" and also a similar invoice, dated "9-7-28," evidencing a like sale and purchase of 170 school books of various kinds.

Babcock testifies that on September 22, 1928 (Saturday), he went to Omaha in his own automobile to "get the books and everything * * * which had been ordered;" that he checked up the books and accounts; that he did not receive anything, however, but directed the school supply house to get the ordered supplies to Cedar Bluffs as soon as possible. It seems that the drum of chemical toilet powder was purchased at this time.

It is conceded that the claimant, in making this trip to Omaha, left Cedar Bluffs accompanied by his wife, in his own automobile, paying for his own oil and gas, about the middle of the forenoon of Saturday, September 22, 1928. On arrival at Omaha he left his wife at the home of her father and mother, and then immediately proceeded to the Pontiac agency, where the car was left for repairs, or, as expressed by witness, for "checking over." From this agency he proceeded to the Omaha School Supply Company, where he arrived "very close to 12 o'clock," where he remained only long enough "to transact that business," when he left. During the noon hour all business transacted for the benefit of the defendant district had been fully completed. Plaintiff then called at the office of Dr. Martin and arranged for the completion of certain proofs required of him in another compensation claim in which he was also plaintiff. This done, he went to the Oakland-Pontiac garage, where his car had been left, and remained for several hours awaiting the completion of the work on his automobile. From there he proceeded to the home of his wife's father and mother, where he remained visiting until between 6 and 7 o'clock p. m. It appears, according to his own story, that no business was transacted for or on behalf of the school district after the noon hour. The rest of the day was devoted to his own personal affairs, and the accident occasioning the injury in suit occurred while he was enroute from Omaha to Cedar Bluffs at about 9:30 p. m. At this time plaintiff was returning home and his wife was with him. None of the property purchased for the school was either in his possession or then being transported by him. There is no evidence in the record that the trip to Omaha was specifically directed or ordered by the board of education. True, a member of the school board testified to the effect that "supplies and things" for the school were customarily bought by the superintendent; that the bills for the property thus purchased by him were subsequently approved by the board of the district

and ordered paid. There is no testimony in the record that the board of district No. 107 of Cedar Bluffs, or the members composing the same, had any knowledge of, or were ever consulted by the plaintiff with reference to, the proposed purchase of the books evidenced by the invoice of 9-7-28, or the drum of chemical toilet powder evidenced by the invoice of 9-22-28, or of plaintiff's proposed trip to Omaha, prior to the occurrence of the accident. It is not even claimed that the corporate authorities of this district gave any specific directions as to his proceeding to Omaha on the district's business. In view of these uncontroverted facts, did the accident and injury occasioned thereby in suit, arise out of and in the course of plaintiff's employment?

It would seem in the instant case that plaintiff's employment is contractual, and that the sum of the duties imposed by a valid contract, including those incidental thereto, is a necessary limitation of the right of recovery in his behalf for an accident and injury "arising out of and in the course of the employment."

"The relation of master and servant must have been established in accordance with the recognized legal standards; and it is essential that the relationship be such as the law recognizes as lawful." 28 R. C. L. 760, sec. 55.

"The general rule to be deduced from the authorities is that a workman's compensation act does not cover illegal contracts of employment, but is based on the existence of a lawful contract of employment and from the foundation of such a contract regulates the compensation to be paid for injuries growing therefrom." Ann. Cas. 1918B, 679, note. See *Stetz v. F. Mayer Boot & Shoe Co.,* 163 Wis. 151; *Benner v. Evans Laundry Co.,* 117 Neb. 701.

It is to be remembered in this connection that "A school district is a creature of statute possessing no powers whatever beyond those given by the legislature, and is unable to contract, *ad libitum,* as individuals may do, but only respecting objects, and to the extent, the

laws permit." *American Surety Co. v. School District,* 117 Neb. 6.

No valid contract in evidence in this case, fairly construed, imposes on plaintiff a duty of purchasing and securing for the defendant school district school books or chemical toilet powder. Indeed, this power is, by necessary implication, expressly denied him. In 1891 chapter 46 of the session laws of that year, relative to school text-books, was duly enacted and approved. It provided, in part, that school district boards, under the terms and conditions set forth in said act, "are hereby empowered and it is made their duty to purchase all text-books necessary for the schools of such district." Comp. St. 1929, sec. 79-1801. And also: "It shall be the duty of the state superintendent of public instruction to prepare and have printed a form of contract between district boards and publishers of school books, and to furnish the same, through the county superintendent, to the several district boards in the state; and no other form of contract shall be used by such district boards and publishers in carrying out the provisions of this article." Comp. St. 1929, sec. 79-1807. It is provided in section 79-1810, Comp. St. 1929: "The provisions of this article shall include all school supplies." There is no claim in behalf of appellant, in the record before us, that School District No. 107 ever entered into a written contract for the purchase of text-books and school supplies in 1928.

The validity of this act was approved by the unanimous opinion of this court in *Affholder v. State,* 51 Neb. 91. The provisions of this enactment are mandatory, its language is plain, and its purpose and policy are equally clear. District boards, and district boards alone, in Nebraska, under the limitations prescribed by this legislation, are vested with the exclusive power of purchasing and supplying text-books and school supplies to their respective districts. Even the form of the written contract, by which these express and limited powers are to be exercised by district boards, is, by the provisions of

the act, imposed upon them. These duties, and the discretion expressed and implied in the purchase of supplies and text-books for schools, under the terms of this statute, are to be exercised by district boards in strict compliance with its mandate, and are not to be imposed upon, or delegated to, teachers and the superintendents of schools in violation of its terms. It follows that text-books and school supplies may not be legally purchased by a district save by the corporate agency therein designated, upon written contract, and in conformity with the controlling provisions of the act.

It is manifest that none of the several items of service alleged to have been performed by the appellant in, and connected with, the purchase and securing of text-books and school supplies for district No. 107, prior to receipt of his injuries for which he sues, was required of him, nor authorized by any valid contract existing at the time of their performance. None of them was, therefore, within the scope of his legal employment. It is quite obvious that the accident, resulting in the injuries to the plaintiff, occurring as he was returning from participation in this unauthorized and unlawful purchasing transaction, is not such as arises "out of and in the course of" the lawful employment of a teacher and superintendent of village schools.

For another reason, of a somewhat different character, this conclusion so stated is sustained by the facts established by the evidence. Relatively a very small portion of the time spent by the plaintiff in Omaha on September 22, 1928, was devoted to the services of his school district. The evidence on this subject tends strongly to support the view that services performed on behalf of the school district were merely incidental to the plaintiff's personal transactions had by him on that day.

The rule appears to be: "But the mission (of the master) must be the major factor in the journey or movement, and not merely incidental thereto, that is to say, if incidental to the main purpose of going to or

from the place of employment it would not bring such person under the protection of the act. If, on the other hand, the main purpose of going or coming was to perform some act arising out of his employment, he would be under the protection of the act, although, incident to the performance of such duty, he might be going or coming from his home." *London Guarantee & Accident Co. v. Industrial Accident Commission,* 190 Cal. 587. See, also, *Madden's Case,* 222 Mass. 487; *Southern Casualty Co. v. Ehlers,* 14 S. W. (2d) (Tex. Civ. App.) 111; *McNicol's Case,* 215 Mass. 497; *Eastman v. State Compensation Insurance Fund,* 12 N. C. C. A. 387, note; *Eby v. Industrial Accident Commission,* 75 Cal. App. 280.

In view of the admitted facts this theory becomes unimportant, for it is certain that no contract of employment was established which imposed any duty upon plaintiff save such as were to be performed at the school building of the defendant district in the capacity of teacher and superintendent of schools. Without the knowledge or express direction of his district board he, on the day of the accident, proceeds to Omaha in his automobile, and there participates in a transaction in that city in a manner not required by any valid contract, but wholly unauthorized and in contravention of the positive provisions of the statute. On his return home, en route from Omaha to Cedar Bluffs, an accident occurs and injuries follow. We are thus confirmed in the opinion that the district court is correct in its determination that the evidence adduced is insufficient to prove that the accident, for which compensation was sought by Herschel L. Babcock, the plaintiff, arose out of and in the course of plaintiff's employment by the defendant district.

The judgment of the district court is, therefore,

AFFIRMED.