ELIZABETH BURLAGE, APPELLANT V. LEFEBURE CORPORATION
ET AL., APPELLEES.

291 N. W. 100

FILED MARCH 15, 1940. No. 30701.

G. E. Price and Archie C. O'Brien, for appellant.

Dressler & Neely and H. J. Lutz, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE,
CARTER, MESSMORE and JOHNSEN, JJ.

ROSE, J.

This is a proceeding under the workmen's compensation
law. Comp. St. 1929, sec. 48-101. Elizabeth Burlage, de-
pendent widow of the employee, Walter W. Burlage, is
plaintiff. The defendants are the employer, Lefebure Cor-
poration, of Cedar Rapids, Iowa, and the latter's insurance
carrier, Iowa Mutual Liability Insurance Company. The
employee was a traveling salesman of general office supplies
under the contract with the employer, hereinafter called
"Corporation," and was required to furnish his own auto-
mobile in the performance of his duties and to operate it
at his own expense. His average compensation in commis-
sions exceeded $22.50 a week.

While traveling toward Omaha on highway 30, about
6:30 p. m., August 21, 1937, the automobile driven by em-
ployee collided with a truck at Johnson's corner, about
seven miles southeast of Fremont, and he was fatally in-
jured, dying the same evening.

Plaintiff alleged in her petition that the accident arose
"out of and in the course of" her husband's employment

and other facts necessary to recovery of compensation under the workmen's compensation law. Comp. St. 1929, sec. 48-101.

Defendants admitted the accident, resulting injury and death; denied other allegations of the petition; pleaded affirmatively, among other defenses, that the employee was on a mission of his own at the time of the accident, and that it did not arise "out of and in the course of" his employment by the corporation, compensation, therefore, not being recoverable. Comp. St. Supp. 1939, sec. 48-152.

' The cause was first heard before a judge of the compensation court who disallowed compensation on the ground that the injury was not compensable because the employee, on his own initiative, had left his line of duties in the course of his employment and was pursuing purposes of his own at the time of the accident, within the meaning of the compensation law. Comp. St. Supp. 1939, sec. 48-152. On a hearing before the three judges of the compensation court, the same conclusion was reached. On appeal to the district court the decision was the same. Plaintiff appealed to the supreme court.

Counsel for plaintiff take the position that the only legal question involved is whether the accident resulting in the death of employee arose out of and in the course of his employment by the corporation and they confidently assert he was then "at work connected with and incidental to his employment as traveling salesman," within the meaning of the workmen's compensation law liberally construed. These propositions were argued at length from the standpoint of plaintiff, with references to the evidence and precedents.

Liberal construction of the workmen's compensation law to give effect to its purpose is a rule too well settled to admit of controversy, but the statute cannot be liberalized by judicial interpretation to allow noncompensable claims. By a long line of decisions the law on the burden of proof has been held to be as follows:

"Burden of proof rests upon plaintiff, in cases arising under workmen's compensation law, to prove with reason-

able certainty that the employee met with an injury or death in an accident arising out of and in the course of his employment." *Porter v. Brinn-Jensen Co.,* 131 Neb. 611, 269 N. W. 96, and cases cited in opinion. Comp. St. 1929, sec. 48-101.

The statutory clause, "Personal injuries arising out of and in the course of employment," has been declared by the legislature "not to cover workmen who on their own initiative leave their line of duty or hours of employment for purposes of their own." Comp. St. Supp. 1939, sec. 48-152.

In support of the allegation that the accident and resulting injury and death arose out of and in the course of the employment, plaintiff testified in substance that she and her husband had been residing at Grand Island and that the territory assigned to him by his employer had been canvassed from his headquarters there; that his territory had been previously changed from time to time, requiring a corresponding change of residence; that in a conference between employee and Leo Lefebure, an officer of the corporation, at which plaintiff was present, it was agreed there should be a reassignment of territory with headquarters at Omaha and that employee should move to that city; that the general manager of the corporation had so directed by letter; that her husband informed her by letter from Omaha Saturday, August 14, 1937, that he would be in and out of Omaha all week making lists of customers and opening up territory; that he called her by telephone Thursday, August 19, 1937, and directed her to come to Omaha on a night train Saturday, saying they could look for an apartment Sunday; that before she left Grand Island, the manager of the Koehler Hotel, where she and her husband resided, informed her that her husband had been killed; that she went to the scene of the accident and there saw the supplies and equipment used by him in his salesmanship, which were always in his car when on duty in his territory. Minute details of the testimony outlined appear in the record. The evidence shows conclusively that employee was traveling on the highway toward Omaha in his own car, driven by him-

self, on a trip from Columbus, when the fatal accident occurred.

An officer of the corporation admitted on the witness-stand that a new assignment of territory and a change of residence and of headquarters to Omaha had been subjects of conversation and correspondence, but denied that an agreement to that effect had been concluded, owing to the refusal of employee to abandon Ord and other parts of his Grand Island district. The existing contract had not been changed in writing, but there was testimony tending to prove that a former oral understanding as to new territory had been reduced to writing at a later date.

In support of the defense that employee on his own initiative left his line of duty under his employment for purposes of his own and was pursuing those purposes at the time of the accident, the corporation adduced evidence of the following facts: It was the duty of employee to make weekly route sheets on Sunday or Monday advising the corporation where he could be contacted. Sunday, August 15, 1937, he reported a route sheet stating he would be working in and around Omaha until Thursday night when he would start for Ord. His register of places and dates indicated: Friday, Ord, care of Ord Quiz; Saturday, Greeley and Madison; Sunday, Norfolk, care of Norfolk Hotel. Thursday, August 19, 1937, he sent the following telegram from Omaha to E. D. Greedy, General Manager of the corporation:

"Letter regarding territory received today. Answering tonight. Desirous of leaving here tomorrow morning for Columbus and Ord. Due to unusual expenses explained in my letter finances are low. Please send my check today to reach me care Castle Hotel, Omaha, Friday morning. Large order at Ord."

As requested, a check for $40 was sent to employee at Omaha. The evidence shows that he was in Columbus about noon Saturday, August 21, 1937, and at that hour called upon a young woman named Maryann Theewen, a friend, at her room in the Meridian Hotel. He had known her for

about three years. She had a sister in Omaha and they arranged for a trip together in his car to Omaha in the afternoon with the understanding that they would return to Columbus Monday morning and bring the sister with them. This friend of employee was called to the witness-stand by plaintiff and her testimony tends to prove the following facts: She and employee had lunch together Saturday afternoon, August 21, 1937, at the Oxford Café, Columbus, talked and smoked there for perhaps an hour. She had one bottle of beer. Then they started for Omaha, but stopped at the Night and Day Café, Columbus, where he telephoned to a customer in Ord, saying he was sorry he would be unable to be there Saturday, but would see him Monday. They again started for Omaha and drove to Schuyler, but stopped at the Gateway Café, where beer was sold; went on to North Bend, where employee drank a glass of beer. At Fremont they both drank beer.

The evidence shows further that employee, at Fremont, in a café, offered to bet that his car would be wrecked on the way to Omaha. They arrived at Johnson's corner, where employee's car collided with a truck about 6:30 the same afternoon. They had been approximately four hours on their way from Columbus to Fremont, a distance of 50 miles. There is no evidence that he transacted any business for his employer on the trip or that he used the supplies or equipment in his car for any purpose during the afternoon. He did not report any orders to the corporation during the week he had spent in Omaha. He had not been directed by his employer to turn back for Omaha on his way to Ord. The only proper finding on the controlling question presented by plaintiff herself is that employee, on his own initiative, left his line of duty under his employment for purposes of his own and pursued those purposes to his injury and death. The injury of plaintiff, therefore, was not compensable under the workmen's compensation law and the compensation court and the district court did not err in so finding.

AFFIRMED.