SELMER A. SOLHEIM, APPELLEE AND CROSS-APPELLANT, v. HASTINGS HOUSING COMPANY, APPELLEE AND CROSS-APPELLEE, KEARNEY CONSTRUCTION COMPANY AND ANCHOR CASUALTY COMPANY, APPELLANTS.

37 N. W. 2d 212

Filed April 29, 1949. No. 32540.

*Chambers, Holland & Groth,* and *John R. Dudgeon,* for appellants.

*Davis, Stubbs & Healey,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an action arising under and by virtue of the Workmen's Compensation Act. Selmer A. Solheim, as plaintiff, seeks to recover compensation benefits for injuries he claims he suffered in an accident while employed by the Kearney Construction Company and the Hastings Housing Company. The Anchor Casualty Company was made a party defendant because it is the workmen's compensation insurance carrier for both of the other defendants.

On June 30, 1945, the Nebraska Workmen's Compensation Court rendered a one judge award finding that at the time of the accident on February 11, 1944, plaintiff was in the employ of both the Hastings Housing Company and the Kearney Construction Company; that while engaged in the performance of his duties as such employee he sustained personal injuries in an accident arising out of and in the course of such employment; that as a result of the accident plaintiff was temporarily totally disabled for a period of 20 weeks; that such temporary total disability was followed by a 25 percent permanent partial disability to his right foot and a 25 percent permanent partial disability to his body as a

whole; and that plaintiff, at the time of the accident, was receiving $69.23 a week.

Based on these findings it awarded plaintiff the sum of $15 each week for a period of 20 weeks temporary total disability; the sum of $15 each week for a period of 37½ weeks because of the 25 percent permanent partial disability of his right foot; and the sum of $11.53 each week for a period of 242½ weeks because of the 25 percent permanent partial disability of his body. The award was joint and several against all of the defendants.

The award also allowed all medical, surgical, and hospital expenses had by plaintiff as a result of the injuries he received.

All parties to the proceeding filed petitions for rehearing of the matter before the compensation court as provided for in section 48-179, R. S. 1943, therein setting forth the errors complained of.

On September 29, 1945, the compensation court entered its award on rehearing. This award was the same, insofar as it fixed the amount of plaintiff's benefits, but did change the nature of defendants' liability. In place of holding as in the one judge's award, that both the Hastings Housing Company and the Kearney Construction Company were jointly and severally liable for the full award it held that the Hastings Housing Company was liable for two-thirds thereof, based on the fact that it paid plaintiff $200 a month as its construction manager, and the Kearney Construction Company for one-third thereof, based on the fact that it paid plaintiff $100 a month as its construction manager. The Anchor Casualty Company, being the compensation insurance carrier for both corporations, was held liable for the full award.

Thereafter the Hastings Housing Company, the Kearney Construction Company, and the Anchor Casualty Company, pursuant to stipulation of the parties, appealed to the district court for Lancaster County, as provided for by section 48-182, R. S. 1943. They filed verified

petitions, as by statute required, setting forth the contentions upon which they relied for reversal.

Thereafter, on July 7, 1948, the district court entered its judgment finding that on February 11, 1944, at the time of the accident, plaintiff was not in the course of his employment by the Hastings Housing Company; that at the time of the accident he was in the course of his employment by the Kearney Construction Company; that he was then in the pursuance of his duties thereof as president and construction manager; that as president he was receiving the sum of $100 a month, as construction manager he was receiving the same amount, and in addition thereto he was receiving the sum of $100 a month for board, lodging, and incidental expenses, thus making a total remuneration from the Kearney Construction Company of $300 a month for the services he was then performing. The court further found that on February 11, 1944, while so employed and engaged in the performance of the duties as such employee and officer, the plaintiff was injured in an accident resulting in his disability, the extent of which the court found to be the same as fixed by the compensation court award.

Based on these findings the court entered a judgment in favor of the Hastings Housing Company by setting aside and holding for naught the Nebraska Workmen's Compensation Court award against it; that plaintiff have and recover from the Kearney Construction Company and the Anchor Casualty Company compensation in the sum of $15 a week for 20 weeks of temporary total disability, the sum of $15 a week for 37½ weeks as compensation for the 25 percent permanent partial disability of plaintiff's right foot, and the sum of $11.53 a week for 242½ weeks as compensation for his 25 percent permanent partial body disability; and that all medical and hospital bills, as in the judgment set forth, be paid. The court also allowed plaintiff the sum of $300 as attorney's fee.

Plaintiff filed separate motions for new trial as to the

Kearney Construction Company and Anchor Casualty Company and the Hastings Housing Company and Anchor Casualty Company. These were overruled on July 7, 1948. The Kearney Construction Company and Anchor Casualty Company also filed their motion for new trial. It was overruled on July 8, 1948. From the overruling of their motion for new trial the Kearney Construction Company and Anchor Casualty Company appealed and the plaintiff has cross-appealed.

For the purpose of this opinion the parties will be referred to as they appeared in the lower court or by their proper or corporate names.

The facts are not in dispute. Plaintiff was president, a director, and the general manager in charge of construction of the Hastings Housing Company. The Hastings Housing Company is a corporation that was organized for and engaged in the construction of emergency defense housing in Hastings, Nebraska.

The minutes of the board of directors of the Hastings Housing Company dated October 15, 1942, showed the appointment of plaintiff as its construction manager "with the authority to contract for the purchase of building materials and labor required in the construction of defense homes * * * in Hastings, Nebraska and to sub-contract with others for assistance in construction, architecture and sales in connection with said homes."

Plaintiff was also president, a director, and the general manager in charge of construction of the Kearney Construction Company. The Kearney Construction Company is a corporation that was organized for and was engaged in the construction of emergency defense housing in Kearney, Nebraska.

The minutes of the board of directors of the Kearney Construction Company dated April 26, 1943, showed the appointment of plaintiff as its construction manager "with the authority to contract for purchase of building materials and labor required in the construction of defense homes * * * in Kearney, Nebraska, and to sub-

contract with others with reference to the construction of said homes."

At the time herein involved both corporations had the same stockholders, directors, and officers but were separate corporations organized to obtain priorities for the building of defense housing in the respective cities of Hastings and Kearney. The principal or home office of these corporations was in Lincoln, Nebraska, but the field and construction operations were carried on from headquarters located on the project in Hastings. Field operations included traveling to other places, such as Endicott, Grand Island, and Omaha, for the purpose of procuring materials, arranging priorities, and generally looking after the interests of the companies. Construction operations were on the separate projects and, as occasion demanded, required traveling between Hastings and Kearney.

It was plaintiff's custom to leave Lincoln, Nebraska, where he lived, on Monday morning and stay in the field until Saturday afternoon, headquartering at the Clarke Hotel in Hastings. Accordingly he left Lincoln on Monday, February 7, 1944, and headquartered that week at the Clarke Hotel.

On the afternoon of Friday, February 11, 1944, at about 3 p. m. plaintiff left headquarters on the project site at Hastings to drive to Kearney. He used his own car for this purpose. He was going to Kearney for the purpose of taking the Kearney payroll, which had been prepared at headquarters in Hastings for Saturday's pay day; to deliver some supplies, including hardware and building material, to the Kearney project; and to pick up estimates of subcontractors on the Kearney project for the purpose of making payments based thereon.

Plaintiff had a typewriter in his car which was intended for use at Kearney in making out some purchase orders. He was also carrying some excess material in his car, including purchase order forms used by both companies in ordering material, loan forms used on the

Kearney project and a check writer, all of which he planned to take to Lincoln on Saturday.

Plaintiff arrived at Kearney about 5 p. m. and went directly to the project site. There he delivered the payroll, the hardware, and the building material. He then took dimensions for and made plans of kitchen cabinets. These were to be installed in the houses on the Kearney project. The Standard Planing Mill in Lincoln was fabricating these and he was going to deliver the plans to them. He then checked the work that had been done on the project and called on the subcontractors to find out when they would probably complete their work. He also got in touch with some lumber dealers in regard to building material needed on the project at Kearney.

While in Kearney plaintiff got in touch with the Tollefson-Elliott Company, lumber dealers, by telephone. He called them from headquarters on the project site. He contacted them in regard to lumber and other materials needed on the Hastings job and ordered certain materials, consisting of siding and flooring, and directed them to send it to the Hastings project. Plaintiff admits no trip was necessary for this purpose, as he could just as well have called from Hastings and given the order, and that he did not and would not have made a trip for that purpose but called while in Kearney solely because he happened to be there on other business.

Plaintiff was through with his work in Kearney about 6:30 p. m. He then ate dinner and left Kearney about 9 p. m. to return to Hastings. He was returning to Hastings that evening in order to be able to mail his plans for the kitchen cabinets to the Standard Planing Mill in Lincoln, hoping to get the mail on the Burlington Denver Zephyr. Upon his return he also planned to check the estimates of the subcontractors on the Kearney project for the purpose of preparing and mailing them their checks, to prepare the payroll for the Hastings

project for Saturday's pay day and, if any time was left, to check some invoices on the Hastings project.

A few miles out of Kearney plaintiff's car ran into a bridge and he was injured. That the accident happened and the extent of the injuries, as fixed by the court below, is not questioned by any of the parties on this appeal.

The first question raised is the nature of the appeal authorized by sections 48-182 and 48-184, R. S. 1943, from an award on rehearing by the full compensation court; that is, did the district court, in the absence of a petition on appeal or cross-appeal by the plaintiff, have authority to modify the award of the full compensation court by increasing the amount for which the Kearney Construction Company was liable?

The record discloses that the district court increased the amount for which the Kearney Construction Company was liable over that awarded by the full compensation court, which only considered plaintiff's wages as construction manager in determining the amount thereof. The district court did this by including as part of his wages, in addition to what he received as construction manager, the salary he received as president and his allowance for expenses. The result happens to be that the total allowed plaintiff is the same but in place of the Kearney Construction Company being liable for only one-third thereof, as determined by the compensation court, it is liable for the full amount.

In construing the Workmen's Compensation Act we have long adhered to the policy of giving it a liberal construction so as not to defeat its purpose by technical refinement of interpretation. This is stated in Ludwickson v. Central States Electric Co., 135 Neb. 371, 281 N. W. 603: " 'It has long been the policy of this court to give a liberal construction to the workmen's compensation law, so that its beneficent purposes may not be thwarted by technical refinement of interpretation. Maryland Casualty Co. v. Geary, 123 Neb. 851,

244 N. W. 797.' Wilson v. Brown-McDonald Co., 134 Neb. 211, 278 N. W. 254."

We have said, with reference to the provisions of the Workmen's Compensation Act, which are now sections 48-182 and 48-184, R. S. 1943, that: "It will be noted that, where a retrial has been had before the full compensation court, the appeal authorized to the district court is limited in scope and is primarily in the nature of an error proceeding. * * * The joint requirement for a transcript and bill of exceptions shows that it was intended to be limited to appeals in the nature of error proceedings, following a trial before the compensation court en banc." Hansen v. Paxton & Vierling Iron Works, 135 Neb. 867, 284 N. W. 352. And in Schmidt v. City of Lincoln, 137 Neb. 546, 290 N. W. 250, we said: "Because a rehearing was had in the compensation court, the appeal which defendant took to the district court was necessarily, under section 48-174, Comp. St. Supp. 1939, in the nature of an error proceeding."

However, although the district court was so limited that fact is of little consequence for, on any appeal to this court under section 48-185, R. S. 1943, we consider the cause de novo upon the record. As stated in Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315: "In this, a workmen's compensation case, the cause is considered de novo upon the record * * * ." See, also, Schmidt v. City of Lincoln, *supra*.

In order to entitle an employee to recover under the Workmen's Compensation Act he has the burden of establishing that the injury arose out of and in the course of his employment for the party from whom he seeks such recovery. Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788, and Huston v. Gage County Electric Co., 134 Neb. 805, 279 N. W. 797.

Where an employee, in the performance of his duties, is required to travel and an accident occurs while he is so engaged it arises out of and in the course of his employment and within the scope of the Workmen's

Compensation Act. Coster v. Thompson Hotel Co., 102 Neb. 585, 168 N. W. 191; Murphy Construction Co. v. Serck, 104 Neb. 398, 177 N. W. 747; Aeschleman v. Haschenburger Co., 127 Neb. 207, 254 N. W. 899; Kirkpatrick v. Chocolate Sales Corporation, 127 Neb. 604, 256 N. W. 89.

Plaintiff testified that it was part of his duties as construction manager for each company to determine the amount of pay due each employee and make out the payroll accordingly, to check invoices, supervise construction, purchase materials, secure labor, pick up estimates of subcontractors, check and issue checks therefor, acquire sites for building homes, arrange the financing of the projects, secure insurance, and secure priorities.

There is no question but that plaintiff, in going to and from Kearney from Hastings, was performing services as construction manager for the Kearney Construction Company. And, although he was also president of that corporation, we think his employment as construction manager and his duties of that position were separate and brought him within the act. As stated in Skouitchi v. Chic Cloak & Suit Co., 230 N. Y. 296, 130 N. E. 299, 15 A. L. R. 1285: "A corporation is a complete entity separate and distinguishable from its stockholders and officers and if it sees fit to have one of the latter serve it in the capacity of an ordinary employee we see nothing to prevent it from so doing." And, as stated in Zurich G. A. & L. Ins. Co. v Industrial Comm., 193 Wis. 32, 213 N. W. 630: "It is conceded that besides holding the office of president of the company and discharging the duties pertaining to that office, he also acted as superintendent of construction upon the works. This constituted an employment palpably separate and distinct from the official duties falling upon him as president of the company. While performing such duties he stood in the same relation to the company that any other superintendent of construction in the employ of the company would occupy. That such person is under the provisions of the

workmen's compensation act is not seriously challenged, and we conclude that, while acting as superintendent of construction, the deceased was plainly an employee of the company." See, 71 C. J., Workmen's Compensation Acts, § 239, p. 507; Kuehnl v. Industrial Commission, 136 Ohio St. 313, 25 N. E. 2d 682; Manfield & Firman Co. v. Manfield, 95 Ind. App. 70, 182 N. E. 539; Annotation, 81 A. L. R. 645; Donaldson v. William H. B. Donaldson Co., 176 Minn. 422, 223 N. W. 772; Annotation 15 A. L. R. 1288; Higgins v. Bates Street Shirt Co., 129 Me. 6, 149 A. 147.

Was the plaintiff, during the trip from Hastings to Kearney and return, engaged in duties relating to his employment as construction manager of the Hastings Housing Company?

The record discloses that his employment by these corporations was separate and not within the provisions of section 48-129, R. S. 1943. As stated in Suverkrubbe v. Village of Fort Calhoun, 127 Neb. 472, 256 N. W. 47: "There is no evidence that at the time he was in the performance of any duty for the power company. The burglar, or robber, was not shown to have been in any way interfering with any property of the power company, but had broken into a store building. It necessarily follows that the injury did not arise out of and in the course. of his employment by the power company. * * * In order to constitute a joint employment, there must have been some joint arrangement between the two employers as to the employment by each. In the absence of any showing that there was any joint arrangement as to salary, wages, hours of employment or term of service, there cannot be any joint employment, within the meaning of section 48-129, Comp. St. 1929 (now section 48-129, R. S. 1943)." Nor does the fact that plaintiff was returning to Hastings to do some work for the Hastings Housing Company within his duties as construction manager thereof place him within the scope of his employment in that capacity.

See Luke v. St. Paul Mercury Indemnity Co., 140 Neb. 557, 300 N. W. 577.

Where an employee leaves the place where his duties are to be performed or where his service requires his presence to engage in other objectives, not incident to his employment, the relation of employee and employer does not exist until he returns to a place where, by the terms of his employment, he is required to perform services.

Here there were no duties relating to his employment as construction manager of the Hastings Housing Company required or planned to be performed on the Kearney trip. He went to Kearney to perform duties relating to his employment as construction manager of the Kearney Construction Company. The only thing he did while at Kearney relating to the Hastings Housing Company was the telephone call relating to siding and flooring for the Hastings job. The nature of that call has been hereinbefore set forth. Plaintiff admits he would not have made the trip to Kearney for that purpose and could just as well have called from Hastings and accomplished the same thing. He only made the call from the project site in Kearney because he happened to be there in connection with his duties as construction manager for the Kearney Construction Company. We think this telephone call was only incidental to the principal purposes of the trip and falls within the rule: " 'But the mission (of the master) must be the major factor in the journey or movement, and not merely incidental thereto, that is to say, if incidental to the main purpose of going to or from the place of employment it would not bring such person under the protection of the act. * * *.' London Guarantee & Accident Co. v. Industrial Accident Commission, 190 Cal. 587." Babcock v. School District, 123 Neb. 491, 243 N. W. 831. See, also, Hammond v. Keim, 128 Neb. 310, 258 N. W. 478.

We do not think the acts performed by plaintiff on this trip for and in behalf of the Hastings Housing Company were of such a nature as to bring him within the scope of

his employment therewith at the time the accident happened. Nor would the fact that the insurance carrier, prior to the filing of this claim and before any adjudication thereof was had, paid to plaintiff, in behalf of the Hastings Housing Company, compensation in the sum of $180 for 12 weeks of temporary total disability and medical and hospital bills in the sum of $832.55 estop the Hastings Housing Company from asserting its claim that plaintiff's injuries did not arise out of and in the course of his employment with it. We find that plaintiff, on the trip from Hastings to Kearney and return, was not performing duties relating to the Hastings Housing Company such as to bring him within the scope of his employment with that company. He therefore has no basis for claim against it.

Plaintiff was employed by the Kearney Construction Company as president, a director, and as construction manager. The duties in each capacity were different and the employment separate. For each position so occupied he was paid a separate salary. The record shows his salary as president and director continued after February 1944, but that his salary as construction manager ceased with that month.

Under the situation here, as disclosed by the record, can the salary plaintiff received as president of the Kearney Construction Company be included as wages and added to what he received as construction manager? This raises the question of whether the salaries of executive officers, as such, are within the scope of the Workmen's Compensation Act. It is apparently not specifically covered by the act, which relates to that of employer and employee. See Chapter 48, article 1, R. S. 1943.

As has already been herein stated there is nothing to prevent such officer from serving in the capacity of an ordinary employee if such relationship is actually entered into with the company.

While certain duties plaintiff performed in the field, such as signing checks, related to his duties as president,

the record does not show he performed or intended to perform any such duties on the trip to and from Kearney. These duties were performed or intended to be performed at headquarters in Hastings.

But even if he had performed such duties on the trip we do not think he would come under the act. An executive officer of a corporation is not, as such, its employee in the ordinary use of the word and, in the absence of express statutory provisions so providing, does not come within the provisions of the Workmen's Compensation Act covering only employers and employees.

"When the president of a corporation acts only as such, performing the regular executive duties pertaining to his office he is not an employee within the meaning of the Statutory definition. Donaldson v. Donaldson Co. (Minn.), 223 N. W., 772; Aitchison v. Industrial Commission (Wis.), 205 N. W., 806; Skouitchi v. Cloak and Suit Co., 230 N. Y., 296, 130 N. E., 299. See to same effect an exhaustive note citing many authorities in 15 A. L. R., page 1288." Higgins v. Bates Street Shirt Co., *supra.* See, also, 13 Am. Jur., Corporations, § 866, p. 854; Bowne v. S. W. Bowne Co., 221 N. Y. 28, 116 N. E. 364; Manfield & Firman Co. v. Manfield, *supra;* Donaldson v. William H. B. Donaldson Co., *supra;* Brown v. Conway Electric Light & Power Co., 82 N. H. 78, 129 A. 633; Hodges v. Home Mortgage Co., 201 N. C. 701, 161 S. E. 220; Ryan v. State Auto Parts Corporation, 255 Ill. App. 422; Carville v. A. F. Bornot & Co., 288 Pa. 104, 135 A. 652.

It logically follows that: "A person holding the title of an executive managing official and at the same time being an employee and performing the work of such should be allowed only to draw compensation based on wages received by him in the latter capacity." Skouitchi v. Chic Cloak & Suit Co., *supra.*

The Workmen's Compensation Act provides that every employer coming under its provisions assumes certain

risks and liabilities. The policy of compensation insurance issued by the Anchor Casualty Company to the Kearney Construction Company was for the purpose of covering its risks and liabilities thereunder.

This policy contains the following provision: "If this Employer is a corporation, the entire remuneration of the President, any Vice-President, Secretary, Treasurer and other executive officers elected or appointed in accordance with the charter and by-laws of such corporation shall be disclosed and premium shall be paid thereon, subject to a minimum individual remuneration of $30 per week, if the actual remuneration is less than such amount, and to a maximum individual remuneration of $100 per week, if the actual remuneration is greater than such amount. The remuneration so determined of each executive shall be assigned without division to the classification which is applicable to the actual operations in which such executive officer is primarily engaged, provided the remuneration so determined of each executive officer who performs such duties as are ordinarily undertaken by a superintendent, foreman or workman, or whose duties include direct charge of the actual performance of any operations of this Employer, shall be assigned without division to the highest rated classification which is applicable to any such duties undertaken by such executive officer for any part of his time." Premium was collected in accordance therewith. ⸶

As stated, the policy only seeks to cover the risks and liabilities of the Kearney Construction Company under the act and does not endeavor to broaden its liabilities thereunder. These provisions are not intended to cover a situation where there is no liability under the act but in situations where the act applies. Such a situation would be where the claimant, although only an officer, is, because of the duties which he is required to and does perform, actually an employee within the contemplation of the act and entitled to compensation. See, Southern Surety Co. v. Childers, 87 Okl. 261, 209 P. 927, 25 A. L. R.

373; and Enid Sand & Gravel Co. v. Magruder, 148 Okl. 67, 297 P. 271.

Should the plaintiff be entitled to consider as a part of his wages, for the purpose of determining his compensation under the act, the sum of $100 a month he received from the Kearney Construction Company for expenses?

The evidence of plaintiff shows that this allowance was not intended to cover traveling expenses, including that of his car, but was for the purpose of reimbursing him for meals, hotels, and all other incidental expenses he had while in the field. It was anticipated that his expenses for these items would probably be about that much and the allowance was intended to compensate him therefor but it was not intended that he should make any profit therefrom.

Section 48-126, R. S. 1943, provides in part as follows: "Wherever in this act the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident, * * * nor shall it include board, lodging or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring; Provided, that if the insurance carrier shall have collected a premium based upon the value of such board and lodging and similar advantages then the value thereof shall become a part of the basis of determining compensation benefits."

The record does not show that any premium was collected by the insurance carrier based upon the amount so allowed.

It is stated in 58 Am. Jur., Workmen's Compensation, §§ 310 and 311, p. 796, that: "As a general rule, * * * amounts paid an employee as reimbursements for expenditures which he is called upon to make in the course of his employment, in activities which he has no occasion to pursue when not employed, are not part of his earn-

ings for the purpose of fixing workmen's compensation. * * * The general rule appears to be that, in the absence of any provision to the contrary, the value of board and lodging furnished to any employee, or allowances made for such purpose, is to be considered in determining the amount of the employee's wages. It has been said, in this connection, that the test to be applied in determining whether allowances made for board and lodging to an employee who is taken away from his home by the business of his employer should be considered as part of his earnings in computing workmen's compensation is whether the allowance represents a real and reasonably definite economic gain to the employee, reasonably within, or at least not contrary to, the fair intent of the parties."

"While fixed sums allowed for board and lodging while away from home may be included in earnings, whether an allowance for board and lodging constitutes part of earning of an employee taken away from home on his employer's business depends on whether such allowance represents a real and reasonably definite economic gain to the employee within, or not contrary to, the intent of the parties." 71 C. J., Workmen's Compensation Acts, § 523, p. 805. See 84 A. L R. 184 and annotations on page 188.

We think the quoted provisions of section 48-126, R. S. 1943, with reference to allowances made to an employee for board, lodging, or similar advantages, although the money value of such advantages is fixed by the parties at the time of hiring, contemplate that such allowances shall represent a real and reasonably definite economic gain to the employee, and so intended by the parties, before it can be considered as wages for the purpose of computing compensation under the act.

The fact that the parties fixed the value of these expenses at the time of hiring, as by statute required, is not, of itself sufficient to entitle an employee to have the amount thereof considered as part of his wages when

he is entitled to compensation under the Workmen's Compensation Act. In addition thereto he must show that such allowance represents a real and reasonably definite economic gain to him.

Our holding in City of Omaha v. Casaubon, 138 Neb. 608, 294 N. W. 389, in effect, followed these principles. Therein board, lodging, and washing furnished claimant while a janitor and utility man at the City Emergency Hospital, which were understood by the parties to have a value of $40 a month, was considered a part of his wages within the meaning of the compensation law. It did represent a real and definite economic gain to the employee and was so intended and understood by the parties at the time of the hiring.

In Maryland Casualty Co. v. Geary, 123 Neb. 851, 244 N. W. 797, it appears that the allowance made to claimant, a trucker, for board and lodging while so employed was primarily for these items while he was on the road. Although this question was not directly involved therein, if it can be said that the opinion holds that any amount allowed an employee for meals and lodging while traveling away from home in the performance of his duties, under an agreement made at the time of hiring to pay for such items, is a part of his wages within the meaning of the workmen's compensation law without showing that such allowance represents a real and reasonably definite economic gain to the employee, and so intended by the parties, we think it is contrary to the real intent and proper construction of the quoted provisions of section 48-126, R. S. 1943.

The record does not disclose that the amount here fixed by the parties represents any real and reasonably definite economic gain to the plaintiff. In fact, it discloses the exact opposite and was so intended by the parties at the time it was fixed. We find it should not have been considered as a part of plaintiff's wages for the purpose of fixing his allowance under the act.

Did the district court, under the provisions of the act,

have the right to allow plaintiff an attorney's fee and, if it did, was the amount excessive?

The allowance of attorney's fees in workmen's compensation cases is purely statutory and provided for, under certain conditions, by section 48-125, R. S. 1943.

With reference to its application we have said: " 'We are of the opinion that the words "in like manner" limit the power granted and refer to the provision in the same sentence with reference to the granting of fees in the district court; and that this court shall allow fees in like manner as shall the district court, that is to say, in the event the employer appeals to this court from an award against him in the district court and fails to "obtain any reduction in the amount of such award" in this court, then a reasonable attorney's fee shall be allowed here.' (Rexroat v. State, 143 Neb. 333, 9 N. W. 2d 305)." Faulhaber v. Roberts Dairy Co., 147 Neb. 631, 24 N. W. 2d 571.

In view of the provisions in the statute the allowance of an attorney's fee by the district court was proper and we do not find the amount thereof to be excessive. However, in view of our holdings herein, the statute does not authorize the allowance of any fee by this court.

We find that the trial court was correct in dismissing plaintiff's claim against the Hastings Housing Company; that the trial court was correct in holding that the plaintiff was injured in an accident arising out of and in the course of his employment with the Kearney Construction Company as its construction manager; that the disability resulting from the injury was as determined and fixed by the trial court; that plaintiff is entitled to receive compensation under the act based on his salary of $100 a month as construction manager; that plaintiff is not entitled to have his salary of $100 a month as president of the Kearney Construction Company and his allowance of $100 a month for expenses as its construction manager considered as part of his wages in determining the compensation to which he is entitled; and

that the attorney's fee allowed by the district court was proper and not excessive but that no attorney's fee can be allowed here.

The action of the district court is therefore reversed with directions to enter a decree awarding plaintiff compensation in accordance with the foregoing findings.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH, J., not participating.