MARGARET H. SEGER, APPELLANT, V. KEATING IMPLEMENT COMPANY, APPELLEE.

60 N. W. 2d 598

Filed October 30, 1953.   No. 33385.

*Hugh Boyle* and *Joseph H. McGroarty*, for appellant.

*Julius D. Cronin* and *Deutsch & Jewell*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action against Keating Implement Company, appellee, by Margaret H. Seger, appellant, for death benefits provided by the Nebraska Workmen's Compensation Act because of the death of Edward F. Seger, an employee of appellee and the husband of appellant, resulting from an accident in the place of business of the employer.

The appellant claims that Edward F. Seger was employed as a mechanic by the appellee in its business for a wage of $48 a week; that on March 31, 1951, he was fatally injured in an accident which arose out of and occurred in the course of his employment; that as a result thereof on that date he died; and that appellant and the four minor children of the deceased are his dependents and entitled to the benefits provided by the Workmen's Compensation Act. Appellee admitted that the deceased was fatally injured and died on March 31, 1951; denied all the other claims of appellant; alleged that at the time of the accident, the injury to, and the death of Edward F. Seger he was not doing any work or perfoming any service of or for appellee but was engaged in his personal business working upon and repairing a motor vehicle owned by him for his use and purpose; that he was not then doing any act, work, or service for appellee, but was engaged in acts for his sole benefit; and that the accident, the injury to, and the death of the deceased arose out of his personal acts and affairs.

The district court found that the work the deceased was doing on his truck at the time of the accident was

not in the course of or connected with his employment but was for his exclusive benefit and advantage and did not concern or benefit his employer; and that the death of the deceased was not caused by an accident arising out of and in the course of his employment by appellee. A judgment of dismissal was rendered and the motion of appellant for new trial was denied.

The issues are whether the deceased was the victim of an accident arising out of and in the course of his employment or did it arise out of a personal transaction of the deceased while engaged in repairing his truck on his time not for the benefit of his employer or as an incident of the employment. The evidence contains no dispute as to any fact material to the issues.

Appellee was a partnership composed of Phillip Keating and his sons Robert Keating and John Keating. Its principal business was selling farm equipment, hardware, lumber, appliances, and "other supplies." It operated as a part of its business a shop for repair work. It employed two mechanics. Edward F. Seger was one of them. He worked for appellee at different times during a period of several years and continuously for about 2 years immediately prior to his death. The regular working hours for the mechanics were 8 a. m. to 6 p. m. excluding Sundays. Business places in Atkinson generally remained open on Tuesday and Saturday evenings of each week. Appellee kept its place of business, except the repair shop, open on these evenings. During the summer season the mechanics were usually at the place of business when it was open. They would frequently take care of any small repair work brought in by customers if there was reason to have it done immediately. Sometimes if they were not there they would be called to do urgently needed repair work. They did not regularly come to the place of business after regular hours during less busy periods. The mechanics were permitted on their own time to use the shop, tools, and appliances without charge to do repair work for them-

selves such as repairing any motor vehicles owned by them.

Mr. Seger was paid his wages for the week ending March 31, 1951, by check about 6 p. m. that day. He was not asked to return to the place of business that evening. There was no unfinished work in the shop when the mechanics left about 6 o'clock. When Mr. Seger reached his home "it was after 6 quite a little." Mr. Schneider brought a part of his washing machine to the home of Mr. Seger that evening and asked to have it repaired as soon as possible. He told Mr. Schneider that he could get it Monday, "If he didn't get it fixed that night he would get at it the first thing Monday morning." The only additional fact the record shows concerning the washing machine part is that it was repaired and Bill Dexter, a mechanic for appellee, delivered it to Mr. Schneider at the shop the next time he was in town which he estimated was "Just a couple of days." It is not shown when or by whom it was taken to the shop or by whom it was repaired. There is an entire absence of any evidence that Mr. Seger did any work on it.

After Mr. Seger had his supper that evening he told appellant that he was "* * * going to take the truck down to work on it between times." He left home about 8 p. m. and was next seen at the place of business of appellee. About 9 p. m. Willis Peterson went to the shop and Mr. Seger was there doing work on his Chevrolet dump truck. The repair work was on the hoist which was used to raise or elevate the body of the truck to dump the contents of it. The front end of the dump box on the truck was elevated and was supported by a 2 x 4 about 6 feet long which was intended to maintain the body of the truck in that position while repair work was being done. Mr. Peterson left the shop after talking to Mr. Seger and was gone an estimated period from 30 minutes to an hour. When he returned to the shop at probably about 10 p. m. Mr. Seger was continuing his work of repairing his truck. Mr. Peterson

left the shop a second time and when he returned about 11 p. m. the timber supporting the body of the truck was on the floor by its side, the truck body had fallen on the upper part of the body of Mr. Seger, and he was pinned between the bottom of the bed and the frame or chassis of the truck. He was dead and his death was caused by the accident.

The hoist on the truck was out of condition. Specifically the valve did not perform its function. The deceased was repairing this when the accident that caused his death happened. He had taken the hoist apart, remedied the defective condition, and had substantially reassembled the hoist before he was killed. There were tools appropriate to repair the truck beneath the hoist and where a mechanic working on it would have had tools. The repair work required that the oil in the cylinder be drained. There was a drain can near the truck after the accident. There was an open 1 gallon oil can about half filled with fresh unused oil near the truck where the work had been done, and the cylinder had been partly filled with fresh oil. The assembly of the hoist was completed after the death of the deceased and it then properly performed its function. It was definitely established that the hoist had been repaired the night of the accident. The truck owned by the deceased and involved in the accident was not in any way connected with or used in the business of appellee and it was of no interest or advantage to it. · A truck previously owned by the deceased had been infrequently used on a very few occasions to remove snow and debris from the premises of the appellee.

Mr. Peterson at about 9 p. m. on the night of the accident entered the place of business of the appellee with the purpose of attempting to have a truck carburetor repaired. He saw Phillip Keating in the front part of the place of business. He directed Peterson to the deceased back in the shop and said something to the effect that maybe he could fix it. Peterson went to

the shop, found the deceased working on his dump or gravel truck, and showed him the carburetor. Deceased took a piece out of it, said it needed some screws, went to the front of the place of business, returned, and said they had no screws of the kind required to repair the carburetor. He took a little screw out of the carburetor, gave it to Peterson, and told him if he could get screws like that that he, the deceased, would put them in the carburetor for him. Peterson went to several places and finally got screws he believed would serve the purpose desired. He went back to the shop and gave them to the deceased, but he found upon trial that they could not be used. Peterson then went to another store in the hope of finding usable screws and when he came back to the shop about 11 p. m. he found that deceased had been the victim of the accident with the result above stated.

An important inquiry is whether the accident causing the death of the deceased arose out of his employment. An injury to be the basis of a cause of action within the provision of the Workmen's Compensation Act must be one caused by an accident arising out of and in the course of the employment. In many instances an injury which occurs in the course of the employment is also one which arises out of it. This is not always true. The compensation law does not make an employer an insurer against all injuries suffered by his employees in the course of their employment, but it does limit the recovery of disability benefits to injuries received both in the course of and out of the employment. The words "out of" refer to the origin of the cause of the accident, and the words "in the course of" relate to the time, place, and circumstances of the accident. The phrases "in the course of" and "arising out of" are not synonymous and when used conjunctively, as they are in the compensation law of this state, a double condition is imposed and both must exist to bring a claim within the act. The right of recovery is statutory and unless a case is brought within the conditions imposed by the

statute it must fail. There is no fixed formula by which the question whether or not an accident arises out of and in the course of employment may be resolved. This must be determined by the facts of each case. Simon v. Standard Oil Co., 150 Neb. 799, 36 N. W. 2d 102; Myszkowski v. Wilson and Co., Inc., 155 Neb. 714, 53 N. W. 2d 203.

It is when there has been some deviation from the usual experiences of employer and employee relationship that interpretation of the act is necessary. The burden is on the claimant to offer proof that preponderates in his favor of each indispensable element of his claim. Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212; Rahfeldt v. Swanson, 155 Neb. 482, 52 N. W. 2d 261. An award of compensation may not be based upon possibilities or probabilities. Meester v. Schultz, 151 Neb. 614, 38 N. W. 2d 739; Rahfeldt v. Swanson, supra. Liberality of construction is related to determination of the scope of the act and not to the evidence produced to establish a claim for compensation. Peek v. Ayres Auto Supply, 153 Neb. 239, 44 N. W. 2d 321.

The dominant motive of the deceased in going to and being at the shop of appellee on the night of the accident was not an intention to further the work of his employer but to pursue and accomplish the repair of his own truck so that it would be available for suitable operation by the county, the lessee of it. This was his announced purpose in the statement to his wife as he was about to depart his home for the shop that night. He was engaged in the work necessary to repair the truck at the times he was seen during the evening. There is no denial that he did repair the truck commencing about 8 p. m. and continuing until he was injured about 11 p. m. that night. He had not at any time that evening abandoned his independent dominant purpose. He pursued it diligently and was interrupted only to examine a truck carburetor, remove a part of it, take out a screw from it, and advise the customer how it could

be repaired. The disclosed circumstances are convincing that the deceased was exclusively pursuing his personal objective at the moment of the accident. His employment by appellee, which was not the cause of his presence at the shop on that occasion, cannot be found to have been a significant factor in exposing him to the hazard and accident that caused his injury and death.

Appellant argues that deceased was principally concerned with performing services for his employer; that he received at his home from a customer a washing machine part for repair; that he transported it that night in his truck from his home to the shop and repaired or attempted to repair it that evening; that he acted in reference to the carburetor referred to above as there related; that the deceased also purchased from appellee one-half gallon of lubricating oil for his use in repairing his truck; and that the repair of the truck was only incidental and the performance of services for appellee was the major purpose of the deceased at the time of the accident. There is no direct evidence that the deceased did anything with the washing machine part after it was left at his home. If it is assumed, as appellant does, that he took it to the shop in his truck when he went there, there is still an entire absence of evidence that he did anything with or about it. It cannot be found that he was at the shop at that time to repair or that he did anything toward repairing it. This incident as it appears in the record is without significance. The indefinite and incomplete showing concerning and the minor character of the oil incident eliminates it from any important bearing on the disposition of this case.

The controlling facts are that the major mission of the deceased was to make a repair of his truck, an activity that was personal, foreign to his employment and the business of his employer, and of no concern, interest, or benefit to appellee; that he was injured while doing an act for his sole benefit; and that it is not shown that the activity in which the deceased was engaged at the

time of the accident had by the conduct of the parties become an incident of his employment.

It is going much too far to say, as appellant contends, that every act which benefits the employer, however slight, is in the course of employment.' The Workmen's Compensation Act of this state declares' that the clause personal injuries arising out of and in the course of employment shall not cover workmen who leave their line of duty for purposes of their own. § 48-151, R R. S. 1943. In Babcock v. School District, 123 Neb. 491, 243 N. W. 831, this appears: "Relatively a very small portion of the time spent by the plaintiff in Omaha on September 22, 1928, was devoted to the services of his school district. The evidence on this subject tends strongly to support the view that services performed on behalf of the school district were merely incidental to the plaintiff's personal transactions had by him on that day. The rule appears to be: 'But the mission (of the master) must be the major factor in the journey or movement, and not merely incidental thereto, that is to say, if incidental to the main purpose of going to or from the place of employment it would not bring such person under the protection of the act. * * *' London Guarantee & Accident Co. v. Industrial Accident Commission, 190 Cal. 587."

Hopper v. Koenigstein, 135 Neb. 837, 284 N. W. 346, concerned a claim for workmen's compensation because of an injury to and the death of Hopper, an employee of Koenigstein. The deceased at the time of the injury to him was at the place required by his employment—in a beer tavern. It was during his working hours. He was fixing the gauges and adjusting the valves of a refrigeration plant installed in the tavern by his employer. He drank beer and associated with customers, one of whom injured him in such a manner that it caused his death. In disallowing the claim of his widow for compensation the court said: "The term 'arising out of the employment' in the workmen's compensation

law covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work * * * are regarded as being within the scope or sphere of the employment. * * * But even if it were Hopper's privilege to sample beer in testing its temperature, or to take a drink as a reasonable incident of a leisure interval of his employment, that privilege could not be carried to the point of license, so that it, and not the employment, became the dominating factor in his conduct and relationship. The drinking by Hopper * * * of beer * * * the cultivation and continuance of a personal relationship with Denton * * * and the general sociabilities which were engaged in during the afternoon together created a hazard that went beyond the privileges or reasonable incidents of Hopper's employment. At the time of the assault, he stood at the tavern bar exposed to a formidable independent hazard which he, and not his employment, had created." The test to be applied in such a situation is there stated as follows: "In determining whether a risk arises out of the employment, the test to be applied to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incident thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard." See, also, Bell v. Denton, 136 Neb. 23, 284 N. W. 751; Burlage v. Lefebure Corp., 137 Neb. 671, 291 N. W. 100; Weideman v. Milburn & Scott Co., 138 Neb. 205, 292 N. W. 594; Simon v. Standard Oil Co., *supra;* Solheim v. Hastings Housing Co., *supra;* Myszkowski v. Wilson and Co., Inc., *supra;* 58 Am. Jur., Workmen's Compensation, § 235, p. 740; 71 C. J., Workmen's Compensation, § 426, p. 678.

The injury inflicted upon the deceased and which caused his death did not arise out of and in the course

of his employment by appellee. The judgment of the district court should be and it is affirmed.

AFFIRMED.