GARY W. LOGAN, APPELLEE, V. ROCKY MOUNTAIN RENTAL, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEE.

524 N.W.2d 816

Filed November 29, 1994.   No. A-94-469.

Richard R. Endacott, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

David L. Wilson, of Burke & Wilson, for appellee Logan.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

SIEVERS, Chief Judge.

On November 19, 1991, Gary W. Logan, while driving a semi-trailer truck for Rocky Mountain Rental (RMR), was involved in an accident when his vehicle left the road and he was thrown out of the cab. The nature and extent of his injuries are not involved in this appeal, nor is the basic compensability of the accident. Rather, we are presented with the limited question of whether the trial judge properly determined Logan's average weekly wage when he arrived at the figure of $543.04 per week. The trial judge's determination in that regard was upheld by the review panel without opinion.

Findings of fact made by the Workers' Compensation Court trial judge are not to be disturbed upon appeal to the review panel unless they are clearly wrong, and if the record contains evidence which substantiates the factual conclusions reached by the trial judge, the review panel should not substitute its view of the facts for that of the trial judge. It naturally follows that an appellate court also does not substitute its view of the facts for that of the trial judge. See *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). When testing the sufficiency of the evidence to support findings of fact by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. See *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

RMR seeks to have us approach this case as a question of law

and to render our independent conclusion thereupon. Logan asserts that the matter of deciding his average weekly wage is a question of fact entailing limited review by this court.

The evidence showed that after Logan answered a newspaper advertisement, he started work for RMR on October 8, 1991, as an interstate truckdriver. He was hired by Ray Palser, and Logan testified that he and Palser talked about his rate of pay, which was agreed to be "[t]wenty cents a mile, both loaded and unloaded miles." In the course of Logan's testimony, he reiterated a number of times that the agreement for pay was 20 cents per mile. RMR does not dispute Logan's testimony that it agreed to pay Logan 20 cents per mile. Logan's pay for the short time that he worked for RMR is summarized in exhibit 8, and the category on the pay summaries entitled "Road Expense" gives rise to the controversy in this appeal.

We use the summarization from exhibit 8 for Logan's third paycheck as our working example. It shows 1,493 miles at 20 cents per mile, equaling $298.60. That total earnings figure is recast in exhibit 8 by calling $122.60 of it "Gross Pay" and $176 "Road Expense." FICA, state taxes, federal taxes, etc., are only calculated on and deducted from the $122.60. The evidence is that for tax purposes, trucking companies are allowed to pay a per diem of $44 per day to the driver, upon which the company does not pay FICA or taxes, and which the driver does not report as income. Thus, in the case at hand, RMR argues that from the total wages which Logan received there needs to be deducted the sum of $44 per day for 29 days of work, which would reduce Logan's average weekly wage to $242.04.

Logan testified that this money was his and that "[i]t had no tax because it was reimbursement to me for expenses incurred out of my pocket." However, there was no evidentiary showing that Logan needed to actually incur $44 per day in road expenses in order to receive this reimbursement or that he actually did incur that amount of road expenses each day, or any other amount, for that matter. In our view, such matters bear on the question of whether this $44 per day represented any economic benefit to Logan.

RMR uses the case *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949), as authority for its proposition

that since the $44 per day did not represent " 'real and reasonably definite economic gain to' " Logan, it should not have been included in Logan's wages. Brief for appellant at 11. We do not disagree that *Solheim* is the case to read and apply in this appeal. In *Solheim*, the employee wished to include expense reimbursement in his salary calculation for workers' compensation purposes. The evidence was that the employee was paid $200 per week as salary plus $100 per week for hotel, meals, and other incidental expenses. Solheim lived in Lincoln, but would spend Monday through Friday nights in a hotel while working in the field. The evidence was that he actually stayed in the hotel. The court said that it was "anticipated that his expenses for these items would probably be about that much and the allowance was intended to compensate him therefor but it was not intended that he should make any profit therefrom." *Id*. at 280, 37 N.W.2d at 221. The court in *Solheim* stated:

> We think the quoted provisions of section 48-126, R. S. 1943, with reference to allowances made to an employee for board, lodging, or similar advantages, although the money value of such advantages is fixed by the parties at the time of hiring, contemplate that such allowances shall represent a real and reasonably definite economic gain to the employee, and so intended by the parties, before it can be considered as wages for the purpose of computing compensation under the act.

*Id*. at 281, 37 N.W.2d at 222.

In the present case, Palser testified that the road expense was for "[w]hatever it takes to live out on the road," acknowledging that "there's sleepers on trucks. I don't know — I know what I spend my money on. What they spend their money on, I don't know." It would appear to be a reasonable conclusion from the evidence that the road expenses would include "board, lodging, or similar advantages." The Nebraska statute on wages for workers' compensation purposes, Neb. Rev. Stat. § 48-126 (Reissue 1993), uses such terms and provides:

> Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed

under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring . . . .

There is, however no evidence whatsoever that there was any discussion of Logan's pay beyond 20 cents per mile, loaded or unloaded, or any discussion of the road expenses or of "board, lodging, or similar advantages" at the time of hiring. Thus, there is no evidence in this record to establish that the road expenses, to the extent that they may be considered "advantages," were fixed by the parties at the time of Logan's hiring.

Additionally, *Solheim* makes it clear that even if the value of the expenses was fixed at the time of hiring, that is not of itself sufficient to support RMR's argument, as the question is still whether the allowance represents "a real and reasonably definite economic gain" to Logan. The trial judge of the Workers' Compensation Court stated: "The fact that the IRS allows a per diem to be deducted for purposes of defendant's creative accounting does not diminish the fact that this sum is actually the plaintiff's standard rate of pay at $.20 per mile and is a real economic gain." Admittedly, the compensation court trial judge wrote four sentences later: "This is *not* a 'real economic gain' to plaintiff and the Court declines to deduct it in computing the average weekly wage." (Emphasis supplied.) However, this sentence obviously contains an author's error with the addition of the word "not" when it is clear from the context of the entire paragraph that the trial judge was making a factual finding that there was real economic gain.

In our view, the burden of proof fell to RMR to establish that Logan's wages, for workers' compensation purposes under § 48-126, should be considered less than what he was actually paid. RMR argues that the burden of proving real economic gain rests on Logan, citing *Solheim*, where the burden was imposed upon the employee. However, the difference between *Solheim* and this case is that in *Solheim*, the employee sought to include the extra allowance, and here the employer seeks to exclude a portion of the admittedly agreed-upon wage of 20

cents per mile as reimbursement because it is not a real economic advantage to Logan. Under these circumstances, we think it appropriate that the burden of proof be imposed upon RMR, not to prove the average weekly wage, but, rather, to overcome Logan's evidence that the agreement was simply that he would be paid 20 cents per mile for his labor.

In the case at hand, RMR would need to show that the road expenses of $44 per day were not a real and definite economic gain to Logan and that the parties, including Logan, so understood when he was hired. There is no evidence to support this proposition. Rather, the evidence shows only accounting entries on Logan's pay documents wherein a portion of his 20 cents per mile gross wages are relabeled "Road Expense" and then taxes are not calculated thereupon. Since the evidence fails to establish that the $44 per day by which RMR seeks to reduce Logan's wages constituted actual reimbursement for actual incurred expenses, it logically follows that such amount, at least in part, represented a real and definite economic gain to Logan.

As should be apparent from our discussion, we consider that in this case the question is a factual one. In other words, the question of what is included within the word "wages" depends upon the facts as shown by the evidence in the record to satisfy the test of real economic gain to Logan. The evidence does not show a dollar-for-dollar reimbursement for meals and lodging or anything close to it. It simply shows an accounting entry to take advantage of an apparent tax benefit available to trucking companies and their drivers. Under the applicable standard of review, we must view the facts, and the inferences to be drawn from them, most favorably to Logan.

RMR relies upon an Iowa case, *D & C Exp., Inc. v. Sperry*, 450 N.W.2d 842 (Iowa 1990). *Sperry* involved an owner-operator of a semi-trailer truck who leased it to D & C Express and who, when injured, claimed employee status. He succeeded on his claim of employee status, and in his appeal, the question of the calculation of his wages was involved. The industrial commissioner calculated wages on the basis of the total amount which Sperry was paid each week under his lease agreement, which was 78 percent of the gross revenues hauled for D & C and 94 percent of the gross revenues received from other

carriers. Sperry testified that of the revenues received, approximately 25 percent of the 78 percent represented compensation for his services and the balance was for the use of his equipment. In affirming the reversal of the commissioner's decision, the Iowa Supreme Court adopted the language in the district court's decision. The first two sentences of the reasoning of the district court are set forth in RMR's brief, but we include the entire quote:

> "It is not absurd to deduct known expenses to arrive at actual wages. It seems quite unreasonable to pay the same amount whether or not expenses are incurred. There is no basis to say that [Sperry] would receive no compensation because he showed a net loss on his tax return. Many factors, such as interest paid, depreciation, [and other matters] enter into a determination of taxable income that would not be applicable to determine actual wages. The court is not persuaded that an attempt to determine the amount paid which was actually wages would be so difficult as to make the system unworkable. If [Sperry] averaged $955 per week in gross earnings and still showed a net loss on his income tax return, then there must have been considerable expenses involved. It would be unreasonable to pay the same amount when those expenses were not in fact being incurred."

450 N.W.2d at 845. The Iowa Supreme Court imposed the burden on Sperry to show his actual earnings.

The difference between *Sperry* and the instant case is that although Sperry was legally found to be an employee for compensation purposes, he stood in a materially different position than Logan. Sperry was an owner-operator who was being paid both for his truck and his services as driver. Thus, when the amount of money received by Sperry obviously included compensation for the equipment which he owned, it was appropriate to impose upon him the obligation to establish the portion of the money which represented compensation for his services in driving the truck, i.e., wages, as distinguished from what he received for providing the truck, i.e., lease payments. We find *Sperry* distinguishable from the case at hand.

We cannot say that the compensation court was clearly wrong on the evidence when it found Logan's average weekly wage to be $543.04. Thus, we affirm.

RMR has appealed and not obtained a reduction in the award. Accordingly, after an appropriate showing under Neb. Ct. R. of Prac. 9F (rev. 1992), the court will allow fees for Logan's counsel.

AFFIRMED.