DeLoris A. McGinnis, appellee, v. Metro Package
Courier, Inc., also known as Express Messenger Systems,
Inc., and Cornhusker Casualty Company, appellants.

561 N.W.2d 587

Filed March 4, 1997.   No. A-96-759.

Mark J. Peterson and Heather M. Flanagan, of Erickson & Sederstrom, P.C., for appellants.

Darrell K. Stock, of Snyder & Stock, for appellee.

Miller-Lerman, Chief Judge, and Irwin, Judge, and Howard, District Judge, Retired.

Howard, District Judge, Retired.

In this workers' compensation case, Metro Package Courier, Inc. (Metro), and Cornhusker Casualty Company (Cornhusker) appeal from a judgment of the Workers' Compensation Court, as affirmed by a review panel, in which the court determined that "mileage reimbursement" checks received by DeLoris A. McGinnis should be included as part of her average weekly wage. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

McGinnis filed for workers' compensation benefits after sustaining a shoulder injury related to her employment on June 23, 1994. At the time of her injury, McGinnis was a courier for Express Messenger Systems, Inc. (Express), and used her own vehicle to make her deliveries. The parties do not contest the nature and extent of McGinnis' injuries or the compensability of her accident. The sole issue at trial was McGinnis' average weekly wage.

The trial court found that at the time McGinnis was hired, in March 1992, Express was to pay McGinnis 60 percent of the revenues it received from the mail and packages she delivered, less certain deductions. Subsequently, in December 1993, Express formed Metro to hire couriers, and Metro then began giving its drivers two paychecks, one for salary and one for "mileage reimbursement." The trial court found that this mileage reimbursement was actually part of McGinnis' wage and that part of McGinnis' pay had merely been relabeled by Metro as "mileage reimbursement" for tax purposes. Thus, the trial court included the mileage reimbursement portions in McGinnis' average weekly wage and found that McGinnis' average weekly wage was $309.22.

On appeal, the Workers' Compensation Court review panel affirmed the decision of the trial court. Metro and Cornhusker appeal.

## ASSIGNMENTS OF ERROR

On appeal, Metro and Cornhusker contend that the court erred in finding that portions of McGinnis' paycheck labeled "mileage reimbursement" were includable in McGinnis' average weekly wage.

## STANDARD OF REVIEW

The findings of fact made by a Workers' Compensation Court trial judge are not to be disturbed upon appeal unless they are clearly wrong on the evidence or the decision was contrary to law. *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996); Neb. Rev. Stat. § 48-179 (Reissue 1993). With respect to questions of law in workers' compensation cases, an

appellate court is obligated to make its own determination. *Wilson, supra.* In determining whether to affirm, modify, reverse, or set aside the judgment of the Workers' Compensation Court review panel, the appellate court reviews the findings of the judge who conducted the trial. *Id.*

■ Under Neb. Rev. Stat. § 48-185 (Reissue 1993), a judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996).

## ANALYSIS

Metro and Cornhusker argue that this court's determination of McGinnis' average weekly wage is a matter of law, not a question of fact, and thus, they contend that this court is required to reach an independent conclusion as to McGinnis' average weekly wage.

In *Logan v. Rocky Mountain Rental*, 3 Neb. App. 173, 524 N.W.2d 816 (1994), this court held that a trial court's determination of average weekly wage is a factual question, since the question of what is included within the word "wages" depends upon the facts as shown by the evidence in the record. See, also, *McGowan v. Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994) (holding that trial court's determination of McGowan's average weekly wage was not clearly wrong); *Clifford v. Harchelroad Chevrolet*, 229 Neb. 78, 425 N.W.2d 331 (1988) (holding that determination of decedent's average weekly wage for workers' compensation purposes was essentially question of fact). Thus, we find that the trial court's determination of McGinnis' average weekly wage is a question of fact.

Metro and Cornhusker contend that even if a court's determination of average weekly wage is a question of fact, the portions of McGinnis' paychecks labeled "mileage reimbursement" are not wages, and thus, these amounts did not constitute eco-

nomic gain and should not have been included in McGinnis' average weekly wage. See *Solheim v. Hastings Housing Co.,* 151 Neb. 264, 37 N.W.2d 212 (1949) (holding that amounts labeled as "reimbursements" must represent real and reasonably definite economic gain to employee before such items can be considered as wages). In reply, McGinnis asserts that these mileage reimbursement checks were actually part of her commission and merely labeled "mileage reimbursement" by Metro after December 1993. We agree with McGinnis and find that the mileage reimbursement amounts are actually part of McGinnis' commission, and as such the trial court correctly included these amounts in McGinnis' average weekly wage.

The relevant statute, Neb. Rev. Stat. § 48-126 (Reissue 1993), provides:

> Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring . . . .

The record reflects that McGinnis began working as a courier for Express in 1992. In December 1993, Express went through a corporate change and formed Metro. Tom Paluka, acting manager of Metro at the time of trial, testified that Metro was formed solely to hire and employ drivers for Express. McGinnis testified that management informed her that beginning December 1993, she would be making exactly the same amount of money, but that all the drivers would now be paid by Metro, not Express, with two different paychecks, one for mileage and one for salary.

Exhibit 3 illustrates how McGinnis was paid, both before and after Metro's formation. Page 6 of exhibit 3 shows the last pay period for which McGinnis was paid by Express. Express multiplied the total revenue for the period, $1,819.47, by 60 percent, and from that amount, it subtracted certain operating expenses, including cargo insurance, vehicle insurance, and

radio expenses, and also deducted health and dental insurance expenses. Express then paid McGinnis the resulting amount, $1,013.52, with one check.

Exhibit 3 also shows the similar manner in which McGinnis was paid by Metro beginning December 1993. Page 4 shows that for the first new pay period, the total revenue was $1,913.56. Metro multiplied this revenue by 60 percent to determine McGinnis' commission, which in this instance was $1,148.14. From this amount, Metro deducted the same operating expenses that Express had before December 1993, but Metro also deducted McGinnis' mileage reimbursement expense, which Metro calculated by multiplying the miles McGinnis reported for the pay period, 3,077, by 28 cents per mile, or $861.56. In this example, the amount left over after Metro now deducted all these expenses was $203.69, which Metro paid McGinnis in a check as "gross salary." Metro then issued McGinnis a separate check "reimbursing" McGinnis for her mileage, in the amount of $861.56.

The record reflects that regardless of the actual miles reported by a driver, the driver's total pay was never more than 60 percent of revenue. That is, a driver could never receive more in mileage and salary combined than the amount which equaled 60 percent of revenue, minus operating expenses, for the pay period. For instance, on exhibit 2, page 30, McGinnis reported 3,065 miles, and thus, if Metro truly had been reimbursing McGinnis, McGinnis should have received a mileage reimbursement check in the amount of $858.20. McGinnis did not receive such a check because this mileage reimbursement was greater than 60 percent of revenue, minus operating expenses (($1,498.05×60%)-$80.56=$818.27). Thus, for that particular pay period, McGinnis received only a mileage reimbursement check in the gross amount of $818.27, and she did not receive a separate check for gross salary.

The above evidence suggests that Metro was not actually reimbursing McGinnis for her car expenses, because her mileage reimbursement check did not necessarily correspond to the miles she reported to Metro. In fact, the evidence shows that the payment schemes before and after December 1993 were

essentially identical, because in both instances McGinnis received 60 percent of revenue, minus operating expenses. The only difference is that beginning December 1993, Metro relabeled a majority of its drivers' pay as "mileage reimbursement" and not "salary" to maximize tax benefits for both parties. Thus, at the time of her accident, McGinnis was simply an employee who was still paid a commission of 60 percent of revenue, minus operating expenses, and therefore, the mileage reimbursement portion of McGinnis' paycheck remained a part of McGinnis' wages and was certainly a benefit.

Other jurisdictions have held that payments to an employee are included in an employee's wage if the payments do not constitute actual reimbursement for actual incurred expenses, but, rather, represent real and definite economic gain to the employee. See 2 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 60.12(a) (1996), citing *Scyphers v. H & H Lumber*, 237 Mont. 424, 774 P.2d 393 (1989) (holding that 3 cents per mile paid to truckdriver as "per diem" compensation was includable in his wages for purpose of fixing workers' compensation benefits, since compensation was not actual reimbursement for out-of-pocket expenses, but, rather, constituted real economic gain to driver), and *Ridgway v. Board of Ford County Comm'rs*, 12 Kan. App. 2d 441, 748 P.2d 891 (1987) (holding that employee's car allowance should be included in calculation of employee's average weekly wage because evidence showed that car allowance represented real economic gain to employee and was not simply reimbursement for out-of-pocket, work-related expenses). See, also, *Logan v. Rocky Mountain Rental*, 3 Neb. App. 173, 524 N.W.2d 816 (1994) (holding that evidence failed to establish that $44 per diem "road expenses" constituted actual reimbursement for actual incurred expenses and therefore that such amounts represented real and definite economic gain to driver and were includable in driver's average weekly wage).

Thus, we find that the trial court was not clearly wrong in including the amounts labeled "mileage reimbursement" in McGinnis' average weekly wage, and we affirm the trial court's decision, as affirmed by the review panel. In view of the fact

that Metro and Cornhusker did not prevail in this appeal, McGinnis is awarded $1,500 in attorney fees in connection with representation on this appeal under Neb. Rev. Stat. § 48-125 (Reissue 1993).

AFFIRMED.