IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

FAYLE V. THIESEN CONSTRUCTION

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JARVIS E. FAYLE, APPELLANT,
V.
THIESEN CONSTRUCTION, APPELLEE.

Filed August 26, 2014.    No. A-13-1137.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Gregory R. Coffey, of Friedman Law Offices, P.C., L.L.O., for appellant.

James D. Garriott, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

MOORE, IRWIN, and PIRTLE, Judges.

MOORE, Judge.

Jarvis E. Fayle suffered an injury to his left knee while in the scope of his employment with Thiesen Construction. While working for Thiesen Construction, Fayle was paid an hourly wage and received a per diem when he worked outside of Nebraska. The Nebraska Workers' Compensation Court entered an award, calculating Fayle's average weekly wage without including the per diem. On appeal, Fayle argues that the per diem should be included in his average weekly wage because it was fixed at the time of his hire and represented a real and substantial economic gain. We affirm because the compensation court's factual findings support Fayle's award and were not clearly wrong.

FACTUAL BACKGROUND

In early 2011, Fayle began working for Thiesen Construction repairing railroad bridges. Although Thiesen Construction is based out of Norfolk, Nebraska, much of Fayle's work was in Kansas. On July 11, 2011, Fayle injured his left knee while working on a bridge in Kansas. The nature and extent of his injuries are not involved in this appeal, nor is the compensability of the accident. Rather, we are presented with the limited question of whether the compensation court properly determined Fayle's average weekly wage.

On December 18, 2012, Fayle filed a petition in the Nebraska Workers' Compensation Court. In relevant part, Fayle alleged that his weekly wage was approximately $750 per week. He requested temporary total disability benefits, permanent partial disability benefits and/or permanent total disability benefits, payment of medical expenses, vocational rehabilitation, and waiting-time penalties, interest, and attorney fees. In its answer, Thiesen Construction, among other things, denied Fayle's allegations regarding his average weekly wage.

On October 24, 2013, the compensation court held a trial on Fayle's petition. The contested issue at trial was Fayle's average weekly wage. Fayle also maintained his claim for penalties, attorney fees, and interest.

Fayle testified that while he worked out of town he was paid a per diem in addition to his hourly wage. He stated that the per diem was discussed at the time of his hire and that he understood it was going to be $20 per day any time he was out of town. Fayle did not have to submit any receipts, and the $20 per day was paid to him whether or not he used the entire amount. Fayle typically worked 5 days a week and approximately 40 to 60 hours per week.

Fayle maintained that the per diem he received was a real and a substantial economic gain to him. However, Fayle did not adduce evidence of his travel expenses and could not specify when he would have profited from the per diem compared to his actual expenses. Fayle acknowledged that there were times when he came out ahead and other times when he came out behind. Fayle's wife testified that she did not believe her husband could keep his job without the per diem. Because their home was 45 miles from Thiesen Construction's office in Norfolk and Fayle did not have a driver's license, his wife would drive him to Norfolk every Monday morning to enable Fayle to meet his crew and leave for Kansas. Fayle gave his wife part of the per diem to use for gas money.

Documentation of Fayle's wages and the per diem he received was received into evidence at trial. Fayle calculated his average weekly wage at $737.19, which included the per diem he received. Thiesen Construction calculated Fayle's average weekly wage at $585.54 without the per diem. The records show that Fayle was paid a per diem that ranged from $120 to $180 per week. There is no explanation in the record for the fluctuation, but most weeks Fayle's per diem amounted to $150.

On November 22, 2013, the compensation court entered an award. The court awarded Fayle temporary total disability benefits and future medical treatment for his left knee injury.

The court determined that Fayle's average weekly wage on July 11, 2011, was $585.54. In so finding, the court determined that Fayle had not met his burden to prove that the per diem should be included in the weekly wage calculation. The court was not persuaded that the per diem constituted a real and definite economic gain, because Fayle could not prove that he actually profited from it. The court concluded that Fayle's and his wife's statements that the per diem pay was a real and definite economic gain were merely conclusory comments. The court concluded that the evidence tended to show that the per diem offset Fayle's traveling expenses. With regard to whether the per diem was fixed at the time of hire as required by Neb. Rev. Stat. § 48-126 (Reissue 2010), the court noted the discrepancy between Fayle's testimony that he was paid a $20 per diem and the documentation which showed that Fayle's per diem ranged from $120 to $180 per week and was most often $150 per week. Based upon this evidence, the court "simply [could not] conclude that the per diem amount was fixed at the time of hire."

The court also determined that Thiesen Construction had been paying Fayle temporary total disability benefits in the correct amount and denied Fayle's request for penalties, attorney fees, and interest. Fayle appeals from the award.

## ASSIGNMENT OF ERROR

Fayle asserts, restated, that the trial court erred when it declined to include the amount of his per diem when calculating his average weekly wage.

## STANDARD OF REVIEW

The judgment made by the compensation court shall have the same force and effect as a jury verdict in a civil case. *Clark v. Alegent Health Nebraska*, 285 Neb. 30, 825 N.W.2d 195 (2013). A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Id.*

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Id.*

## ANALYSIS

Fayle contends the per diem should have been included in his average weekly wage calculation and makes two arguments to further this contention. First, Fayle argues that the requirement that he prove the per diem provided a real and definite economic gain is contrary to the plain language of § 48-126. Next, Fayle argues that the compensation court incorrectly concluded that he did not prove the per diem was fixed at the time of his hire and that it constituted a real economic gain. He states that he introduced uncontroverted evidence to establish the per diem's gain.

For the purposes of workers' compensation, wages are defined by § 48-126. This section provides in relevant part:

> Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. It shall not include gratuities received from the employer or others, nor shall it include board, lodging, or similar advantages received from the employer, unless the money value of such advantages shall have been fixed by the parties at the time of hiring . . . .

In *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949), the Nebraska Supreme Court considered whether an injured worker was entitled to include the $100 per month he received from the employer for expenses in his average wage calculation. In interpreting the above language of § 48-126, the Nebraska Supreme Court concluded that allowances made to an employee for board, lodging, or similar advantages, although the money value of such

- 3 -

advantages may be fixed by the parties at the time of hiring, must constitute a real and reasonably definite economic gain to the employee before they can be considered wages. This case represented the first instance where the Nebraska Supreme Court mentioned the real and reasonably definite economic gain requirement.

Fayle argues the real and reasonably definite economic gain requirement in *Solheim* is "judicially invented gloss" on § 48-126. Brief for appellant at 9. He proposes that this court decide the present case based on the Nebraska Supreme Court's earlier interpretation of § 48-126 in decisions that predate *Solheim*. Citing *Maryland Cas. Co. v. Geary*, 123 Neb. 851, 244 N.W. 797 (1932), and *City of Omaha v. Casaubon*, 138 Neb. 608, 294 N.W. 389 (1940), Fayle contends that under the language of § 48-126, he must only prove that his per diem was fixed at the outset of his employment in order to include it in wage calculations. He contends the Nebraska Supreme Court's earlier interpretation of the statute is in line with the purpose of the Nebraska Workers' Compensation Act. See *Moyera v. Quality Pork Intern.*, 284 Neb. 963, 825 N.W.2d 409 (2013) (Nebraska Workers' Compensation Act provides benefits for employees who are injured on job, and act is construed to accomplish this beneficent purpose).

Despite Fayle's arguments, we are required to follow *Solheim*. Vertical stare decisis compels lower courts to follow strictly the decisions rendered by higher courts within the same judicial system. *State v. Hausmann*, 277 Neb. 819, 765 N.W.2d 219 (2009).

Fayle testified at trial that the amount of the per diem was fixed at $20 at the time of his hire. He acknowledges in his reply brief that the written evidence did not correspond to his testimony, but he claims the evidence actually revealed a fixed $30 per diem. The payroll documents showed that the per diem was paid in weekly amounts that ranged from $120 to $180, with the most prevalent amount being $150. These amounts do not appear to correspond with how many days or hours Fayle worked during a particular week. There was no explanation at trial for the fluctuation in the amount of the per diem. Thus, we find no clear error in the trial court's finding that the money value of the per diem was not fixed by the parties at the time of hire as required by § 48-126.

Even if Fayle met his burden of proving that the per diem was fixed by the parties at the time of his hire, he must still meet the real and reasonably definite economic gain requirement established by *Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212 (1949). In support of his claim of economic gain, Fayle cites our decision in *Logan v. Rocky Mountain Rental*, 3 Neb. App. 173, 524 N.W.2d 816 (1994). In *Logan*, the employer agreed to pay a truckdriver a wage of 20 cents per mile. However, when the driver was paid, the employer considered $44 each day as a per diem. The evidence at trial showed that trucking companies were allowed to pay a $44 per diem to the driver, upon which the company would not pay FICA or taxes and which the truckdriver would not have to report as income. At trial, the employer sought to have the $44 per diem excluded from the driver's weekly wage calculation.

In deciding *Logan*, we noted the situation was the converse of *Solheim* because the employer was attempting to exclude a portion of the agreed upon wages. Therefore, we held that the employer had the burden to prove that the per diem was not a real and definite economic gain to the driver. We also determined that the question of weekly wage was a factual one. We affirmed the compensation court's decision declining to deduct the per diem payments from wages, holding that the court was not clearly wrong in finding that the employer failed to adduce

sufficient evidence to show that the per diem was not a real and definite economic gain to the employee. We noted, "The evidence does not show a dollar-for-dollar reimbursement for meals and lodging or anything close to it." *Id*. at 178, 524 N.W.2d at 820. Rather, we concluded that the employer was simply taking advantage of an apparent tax benefit.

In the present case, Fayle is attempting to add the per diem to his wage calculation. He contends the per diem should be included in the weekly wage calculation because a $20 per diem was established at the time of his hire and it did not constitute actual reimbursement for his expenses. He highlights his testimony that he did not have to submit any receipts in order to receive the per diem. In his opinion, the per diem was simply part of his standard rate of pay and, therefore, a real and definite economic gain.

However, Fayle did not adduce evidence of his actual expenses. Rather, he testified that sometimes he came out ahead with the per diem and sometimes he did not, as compared to his actual expenses. Additionally, he could not state when he ever actually profited from the per diem. Although not clear from the record, it appears that the per diem was used for gas for Fayle's wife to transport him to the company office and food while Fayle was working in Kansas. We conclude that the trial court was not clearly wrong in finding that evidence tended to show that the per diem offset Fayle's traveling expenses and in determining that Fayle did not meet his burden of proving a real and definite economic gain.

Because Fayle sought to augment his wages with the per diem, he had the burden to prove that it was fixed at the time of hiring and was a real and definite economic gain to him. See, *Solheim, supra*; *Logan, supra*. We cannot say the compensation court was clearly wrong when it excluded the per diem from Fayle's weekly wage calculation. Therefore, we affirm its calculation of Fayle's weekly wage.

## CONCLUSION

We affirm the compensation court's award.

AFFIRMED.