# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1661

_____

Yassine Baouch, on behalf of himself and all those similarly situated; Scott Larrow, on behalf of himself and all those similarly situated; Justin Burkholder; Robert William Herrmann; Radek Kohout; Jack Dean Michael; Steven Richard Milstead; James Myrick; Troy Edmund Townsend; Claire Elizabeth Bodo; Wayne Darius Grant; Adam Hoffman; Joseph Dewayne Thomas; Danielle Marie Barney; Chad Ryan Basso; Caroline Cecelia Busick; Christopher Clay Day; Bruce L. Marsha; Dale Don Oshiro; Aaron David Wing; David Allen Faykosh; Steve N. Neely; Jatarveiyon Kevin Lee Ashley; Michael Egli; Thomas Fisher; John A. Phillips; Marvin E. Rush; Marvin E. Rush; Adams Frank Akhalu; Steven Wayne Doane; Thomas A. Gillis; William A. Hamilton; John Ray Minor; Joseph Sablan Salas; Timothy Leonardo Smith; Terri Lynn Thacker; Brian Zeitz; Lance Edwards; Mark Sohmer; Joseph Horton

*Plaintiffs - Appellants*

v.

Werner Enterprises, Inc., doing business as Werner Trucking; Drivers Management, LLC

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 15, 2018
Filed: November 14, 2018

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellants, a class made up of over 52,000 experienced and student over-the-road truck drivers employed by Werner Enterprises, Inc., appeal from the district court's[1] grant of summary judgment in favor of Werner, and the court's dismissal of this action raising claims under federal and state wage and hour laws. We affirm.

## I.    BACKGROUND

In 2003,[2] Werner implemented an optional Payment Plan, which compensated drivers employed in positions that required them to travel and spend nights away from home on a regular basis. The Payment Plan offered non-taxable, mileage-based "Payments" to those drivers electing to participate in the Plan. In order to provide the Payments free of employment and income taxes, Werner's Payment Plan had to qualify as an "accountable plan" under Internal Revenue Service (IRS) Treasury regulations. Treas. Reg. § 1.62-2(c)(2). And, in order to qualify as an accountable plan, the Payment Plan needed to meet the IRS regulations' so-called business connection, substantiation, and return of excess expenses requirements. Id. § 1.62-2(c)-(f). To that end, when it established the Plan, Werner represented to the IRS, in part, that the Payments at issue were reimbursements for travel expenses that employees were reasonably expected to incur.

_____

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

[2]At that time the Payment Plan was only available for Werner's student drivers. Werner made the Plan available to eligible, experienced drivers in 2004.

Specifics regarding the Payment Plan are explained more fully by the district court. For general purposes here, however, it is key to note that because the Payments were not subject to employment and income tax withholding, the Payment Plan's primary effect was to cause participating drivers to receive more money in the form of take-home pay in their weekly paychecks. Student drivers participating in the Payment Plan received a low taxable daily rate and static untaxed Payments for every day they were considered away from home overnight. Participating experienced drivers received one portion of their pay based on an applicable mileage rate, subject to taxes, and the other portion as Payments consisting of a non-taxable sum based on the applicable Payment Plan mileage rate for days spent driving away from home overnight. Drivers electing not to participate in the Payment Plan received all of their pay, based on various per-mile rates, subject to employment and income taxes. To the extent non-participating drivers incurred meal and other incidental expenses while traveling, such expenses could be validated with receipts and deducted on their annual income tax returns. Participating drivers, however, could only deduct such expenses on their annual tax returns when the expenses exceeded their Payments, which sums were subject to the daily limit imposed by the federal meal and incidental expenses (M&IE) rate. Werner asserted in this action that it established its Payment Plan as a recruiting tool to attract drivers, as other trucking companies operated similar plans providing untaxed payments for meals and incidental expenses.

The impetus for the instant action is Werner's inclusion of these Payments in its minimum wage calculation under the Fair Labor Standards Act (FLSA), the Nebraska Wage and Hour Act (NWHA), and the Nebraska Wage Payment and Collection Act (NWPCA). According to the class, because these Payments are reimbursements for traveling expenses incurred by them in furtherance of Werner's interests, they should be *excluded* from the regular rate calculation established under the FLSA and supporting Department of Labor (DOL) regulations as well as the NWHA. If such exclusion is accomplished, and the Payments made by Werner cannot be used to offset the calculation of minimum wages due, the class drivers

assert that they do not make a minimum wage. Werner disagrees, representing that for purposes of calculating the employees' regular rate in determination of minimum wage requirements, these same Payments are *not* reimbursement for reasonable travel expenses, but rather are wages, since they actually compensate the class drivers for services rendered.

Indeed, the class focuses a large part of its argument on what it claims is Werner's contradictory stance under the FLSA, wherein Werner describes these same Payments as payments that are *not* reimbursement for reasonable travel expenses for purposes of the employees' regular rate calculation, but rather are remuneration for services (i.e., wages). According to the class, the representations Werner made to the IRS (that these Payments *were* reimbursement for travel expenses Werner reasonably expected its drivers to incur) and those it made to the DOL are legally incongruent and the Payments should be excluded from the regular pay rate calculation under the FLSA.

Reviewing the statutory scheme of the FLSA and the supporting DOL regulations, the district court held that to determine whether the Payments are included in the regular rate calculation, it had to evaluate 1) whether the Payments were reimbursements for expenses incurred solely for Werner's benefit or convenience; and 2) whether the Payments approximated actual expenses. Breaking the analysis down, and relying on the persuasive authority of the DOL Field Operations Handbook (DOL Handbook) as well as court precedent analyzing per diem payments and regular rate calculations, the district court held that the Payments were part of the regular rate. The fact that these Payments at all times reflected hours worked and functioned as a wage rather than a true per diem expense reimbursement, and also that the Payments plus the taxable wage received by the participating employees were "suspiciously close" to the total taxable wage of nonparticipants was equally persuasive in the court's evaluation of the matter. All these indicators pointed

the court toward a conclusion that the form and purpose of the Payments were intended to act as remuneration for work performed under the FLSA.

The court rejected the class's judicial estoppel argument as well, succinctly stating that the IRS regulations governing accountable plans are not necessarily compatible with the DOL regulations governing employees' regular rates for minimum wage purposes. Thus Werner did not (indeed, could not) take an inconsistent position in its representations to the various agencies. Based on similar analyses, the court likewise dismissed the class claims under the NWHA and the NWPCA. The class appeals.

## II. DISCUSSION

### A. Standard of Review

The class asserts that the district court erred in granting Werner's motion for summary judgment. We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences in their favor. Lindeman v. St. Luke's Hosp. of Kan. City, 899 F.3d 603, 605 (8th Cir. 2018). We will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The class argues that the district court erred in finding that reasonable Payments made by Werner for traveling expenses it reasonably expected its over-the-road truck drivers to incur could be used to offset minimum wages due. It claims the court ignored binding admissions and evidence in its analysis regarding these Payments and failed to estop Werner from characterizing the Payments in any way other than as it did prior to this litigation.

## B.        "Binding Admissions" and Judicial Estoppel

A primary thrust of the class's argument on appeal rests on what the class believes to be binding admissions made by Werner to the IRS regarding the Payments as well as statements made during the course of this litigation.  It further contends that these admissions  alone are "all that is needed to exclude the Payments from wages." It claims that the only evidence in the record demonstrates that the per diem Payments were solely designed to provide a living allowance or reimbursement for the expenses drivers incurred while over-the-road on Werner's business and Werner must be held to that representation, either because they are legally bound, or simply as a matter of common sense.  And, as discussed below, if held to a particular understanding of its IRS representations, the class argues that the Payments must be excluded from the regular rate calculation under the FLSA.  As a matter of law, however, judicial estoppel does not apply in this matter.  Contrary to the position advocated by the class, Werner is not bound to previous statements in such a way that affects the outcome of this case.

"The doctrine of judicial estoppel prevents a party who 'assumes a certain position in a legal proceeding, and succeeds in maintaining that position,' from later 'assum[ing] a contrary position.'" Scudder v. Dolgencorp, LLC, 900 F.3d 1000, 1006 (8th Cir. 2018) (alteration in original) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)).  Three considerations "typically inform the decision whether to apply the doctrine in a particular case:"  1) "a party's later position must be clearly inconsistent with its earlier position," 2) whether the party "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled," and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (quotations omitted).

Werner's prior representations to the IRS were not clearly inconsistent with those taken here. The IRS regulations governing accountable plans are not identical to the DOL regulations governing the calculation of employees' regular rates for minimum wage purposes. There are legal differences and, in the case of a regular rate calculation, many additional factors at play. The two findings are not coextensive and thus a finding in one does not negate or direct a finding in the other. Accordingly, because there are legal differences, there is no inconsistency in Werner's positions before the agencies and its representations do not support estoppel.

Outside of a legal estoppel theory, the class advances that Werner is otherwise prohibited from describing the Payments as they do in this wage-and-hour case because they simply and blatantly contradict earlier representations to the IRS–a "quasi-estoppel" theory. Amtrust, Inc. v. Larson, 388 F.3d 594, 601 (8th Cir. 2004) ("'Quasi-estoppel' has been invoked by various courts to estop parties from asserting a position in judicial proceedings different than what was reported on their income tax returns."). However, as just noted, these positions are not inconsistent so even if we would adopt a quasi-judicial theory here, it has no application on these facts. To be sure, the representations to the IRS regarding these reimbursements for purposes of establishing an accountable plan, and the discussion of how to calculate these same per diem Payments for the purpose of a regular rate determination under the FLSA are close, and discussion of these Payments, and their purpose, in each situation could be confusing. Despite the similarity, it was reasonable for the district court, viewing the statutory schemes in play and the facts of this case, to hold that Werner is not estopped in these circumstances, nor beholden to earlier representations in a legally binding way. We do not turn a blind eye to Werner's earlier representations but we equally do not lose sight of the query at the heart of this action.

What Werner anticipated its drivers would incur for business expenses in establishing its accountable plan, see Treas. Reg. 1.62-2(d)(3)(i), is not synonymous

with how Werner must calculate its employees' regular pay rate under the FLSA. Although both calculations require an analysis of how to treat per diem allowances, they are done for different purposes and under entirely unique regulatory schemes. Werner's communications with the IRS regarding per diem allowances were for the purpose of exemption from employment taxation of Werner's reimbursement of employee travel expenses under an accountable plan. However, under the FLSA, the analysis of per diem allowances was for the purpose of computing its employees regular pay rate. The class's attempt to conflate Werner's words and representations, out of context, is misplaced and "in no way binds this court in this case." Acton v. City of Columbia, Mo., 436 F.3d 969, 978 & n.11 (8th Cir. 2006) ("[T]he 'remuneration for employment' determination [under the FLSA] is a highly fact-intensive question that focuses narrowly on the specific operation of the program at issue . . ."). Having determined that Werner is not cabined in the instant case to a particular representation of "reimbursement" as might have been germane in previous IRS proceedings, we move to the matter at hand.[3]

## C.    Minimum Wage

The determinative discussion concerns how these Payments fit within the FLSA "regular rate" rubric. The FLSA requires that every employer engaged in commerce pay a statutorily mandated minimum wage. 29 U.S.C. § 206. An employer violates the FLSA's minimum wage requirement when an employee's "regular rate"

---

[3]As to the class's remaining arguments regarding the legal relevance of Werner's representations in matching contributions in its employees' 401(k) retirement accounts, its alleged representations in its unemployment reporting, and labels given the Payments by Werner in its corporate literature, these arguments fail for the same reasons as just indicated. The requirements of judicial estoppel are not met. Scudder, 900 F.3d at 1006-07. Any representations made by Werner in prior contexts mentioned here, though relevant to an extent, are not legally binding in our instant inquiry.

drops below the minimum wage.  Id. §§ 206, 207.  Section 207 defines the regular rate, stating "[a]s used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," provided that such remuneration is not prohibited by one of eight statutory exclusions listed under § 207(e)(1)-(8).  29 U.S.C. § 207(e). Relevant here, § 207(e)(2) excludes reimbursements for certain expenses incurred by an employee in the furtherance of the employer's interests, including "reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment."  Id. § 207(e)(2).  Regarding such reimbursements, the language contained in the Code of Federal Regulations reiterates these exclusions, but likewise makes clear that not all payments for expenses incurred while an employee is away from home are excluded from the employee's regular rate for minimum wage purposes.  For example, 29 C.F.R. § 778.217(d) explains:

> The expenses for which reimbursement is made must in order to merit exclusion from the regular rate under this section, be expenses incurred by the employee on the employer's behalf or for his benefit or convenience.  If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby.

Accordingly, because a per diem either can be excluded from, or included in, a regular wage depending on myriad factors and purposes, a case-specific factual inquiry is necessary.  See Berry v. Excel Group, Inc., 288 F.3d 252, 254 (5th Cir. 2002) ("From the language of the FLSA itself and the related regulations, we find that the Act requires each employee's expenses to be examined on a case-by-case basis to see whether the "per diem" is appropriate and reasonable.").

Noted above, the class claims that the legal issue before us is whether the Payments made by Werner, "labeled as reimbursements on every paystub issued to every class member, explained as reimbursements in Company-provided literature, found to be legitimate reimbursements during an IRS audit, and treated by [Werner] as reimbursements (not compensation) for all tax-withholding, benefit, and unemployment purposes, may constitute something other than reimbursements for the purpose of complying with the FLSA and Nebraska law." They claim these Payments clearly fall within the § 207(e)(2) exception, end of story. But, that recitation is not finely on point. The only legal issue before the court is whether these Payments are included in Werner's regular rate calculation; whether they are indeed remuneration for employment under the FLSA. Resolving this matter, in part, includes discussion of reimbursements as defined under the FLSA and how, particularly, they should be handled, and even includes discussion as to how Werner has represented these Payments for various purposes in the past, but our conclusion does not rise and fall upon that latter point uniquely or in isolation.

There are many factors in a determination under the FLSA as to whether a payment is included in the regular rate calculation. The basic inquiry is whether the challenged Payments constitute remuneration for employment, and, if so, whether they are nevertheless excluded by one or more of the statutory exceptions enumerated under § 207(e)(1)-(8). 29 U.S.C. § 207; Acton, 436 F.3d at 977 n.9. "There is a statutory presumption 'that remuneration in any form is included in the regular rate calculation.'" Acton, 436 F.3d at 976 (quoting Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 187 (3d Cir. 2000)). The district court held that these Payments are remuneration for employment and are not excepted from the regular rate calculation. We agree.

This case rises and falls on the "exception" piece of the puzzle, or lack thereof, more accurately. The class argues the district court erred because reasonable payments for travel expenses do not constitute wages under the FLSA and Nebraska

law and claim the court erred in failing to hold that the Payments are excepted by §  207(e)(2). They argue the district court failed to consider whether the exclusion applied at all in this case. But this is not so. The district court based its analysis on determining whether the Payments should be excepted from the regular rate calculation, evaluating 1) whether the Payments were reimbursements for expenses incurred solely for Werner's benefit or convenience; and 2) whether the Payments approximated actual expenses. See 29 C.F.R. § 778.217(a).[4]

One key determinant driving the matter is that these Payments are based upon hours worked (i.e., miles driven) and are thus correctly included in the regular rate calculation, at least for the experienced drivers paid accordingly. Too, these Payments function as a wage rather than as true per diem reimbursements.

Per diem payments that vary with the amount of work performed are part of the regular rate. Gagnon v. United Technisource, Inc., 607 F.3d 1036, 1041-42 (5th Cir. 2010); Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 35-37 (1st Cir. 2014). Because Werner tied the Payments to the miles driven, i.e., work performed, the present case is distinguishable from those in which employers did not "tie[] per diem payments to the amount of hours that employees worked." Sharp v. CGG Land (U.S.) Inc., 840 F.3d 1211, 1215, 1216 (10th Cir. 2016) ("Employees do not receive higher per diem payments after working longer hours. And it bears repeating that the Parties stipulated that the payments were reasonable payments for meals. Here, Employees traveled to remote job sites away from home to perform lengthy work stints for CGG. While away from home, Employees incurred meal expenses while serving CGG as employees and while furthering CGG's interests. For all the reasons stated, these travel expenses are exempt under 29 U.S.C. § 207(e)(2).").

---

[4]Part 778 of the Code of Federal Regulations contains the DOL interpretive regulations, which do not have the force of law. They are, however, entitled to respect to the extent they are persuasive. 29 C.F.R. § 778.1; Madison v. Res. for Human Dev., Inc., 233 F.3d 175, 185-86 (3d Cir. 2000).

-11-

The class takes issue with the district court's review of these cases and other authority discussing reimbursements in cases reviewing similar payments in the context of overtime calculations. Often in the normal course, discussions involving the inclusion, or not, of per diem payments in the regular rate occur in cases where employees are challenging an employer's *exclusion* of the payments from their regular rate and the challenging employees seek to have them included for purposes of overtime and raising an hourly wage rate. That the class seeks the opposite in this action is a distinction without a difference because the calculation of the regular rate is a factual analysis and remains unchanged.

These regular rate and minimum wage calculations are discussed similarly regardless of the situation, as what may or may not be included in the wage calculation in the first instance applies in each query. 29 C.F.R. § 779.419(b) (the "regular rate" is the hourly rate an employee is actually paid for the normal, nonovertime workweek for which he is employed); 29 U.S.C. §§ 206(a) (establishing minimum wage requirements, which necessarily require a calculation of the regular rate) and 207(a) (explaining that if an employee works in excess of forty hours a week, the employee must "receive[] compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed"); see also Stein v. hhgregg, Inc., 873 F.3d 523, 537 (6th Cir. 2017) ("Assuming a week-long pay period, the minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage, and the overtime requirements are met where total compensation for hours worked in excess of the first forty hours equals or exceeds one and one-half times the minimum wage."). Accordingly, although the context in which these terms are discussed might vary under the FLSA, the legal standards do not.

The DOL Handbook contains guidance in our inquiry.  We treat the DOL Handbook as persuasive authority.  "Interpretations such as those in opinion letters–like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law–do not warrant Chevron-style deference," Christensen v. Harris County, 529 U.S. 576, 587 (2000), but are entitled to respect under Skidmore v. Swift & Co., 323 U.S. 134 (1944), based on their persuasiveness.  Christensen, 529 U.S. at 587.  We agree with the class that just like the DOL regulations in part 778 of the Code of Federal Regulations, the provisions in the DOL Handbook are not dispositive but we do find them persuasive. The DOL Handbook "is an operations manual that provides Wage and Hour Division . . . investigators and staff with interpretations of statutory provisions, . . . and general administrative guidance."  Field Operations Handbook (FOH), United States Dep't of Labor, https://www.dol.gov/whd/FOH/index.htm.  We do not discount the expertise offered by the DOL, as it handles and regulates the application of the FLSA.

Section 32d05a(c) of the DOL Handbook provides that "[i]f the amount of per diem or other subsistence payment is based upon and thus varies with the number of hours worked per day or week, such payments are a part of the regular rate in their entirety."  Applying this factor, it is the method of calculating the per diem–the measuring unit used–that informs a determination regarding whether or not the Payment is treated as a wage included in the regular rate.  The DOL Handbook thus reinforces the thrust that at the end of the day under the FLSA, one important criterion is whether a payment is remuneration for employment, or not.[5]  Here, no

---

[5]This determination is reinforced by the DOL's explanation in 29 C.F.R. § 778.224 that the "other similar payments" included in § 207(e)(2)'s exception was not intended to permit the exclusion from the regular rate, payments such as bonuses, that though they are not directly attributable to any particular hours of work, nevertheless are clearly understood to be compensation for services.  This interpretation presupposes and directly explains that the basic types of payments excluded from the

-13-

matter that Werner's Payments were established to reimburse expenses the company reasonably expected its employees to incur, for purposes of the FLSA, we must further look to how these Payments were calculated for guidance. Because these Payments for the experienced drivers are based upon the amount of work performed (miles driven) they are part of the drivers' regular rate.

Most notable in this case are the seemingly obvious indicators that these Payments function as a wage. Foremost, the comparable pay indicates that the Payments to the experienced and student drivers, alike, were remuneration for employment included in the regular rate. The total pay–Payments plus applicable taxable wage–to both participating experienced and student drivers, alike, was suspiciously close to the taxable wage paid to non-participants. This same fact was incredibly pertinent in Gagnon, where the court observed it would be "difficult to believe that a skilled craftsman would accept a wage so close to the minimum wage when the prevailing wage for similarly skilled craftsmen was approximately three times the minimum wage." Gagnon, 607 F.3d at 1041. The court was also "troubled by the fact that the combined 'straight time' and 'per diem' hourly rates approximately match[ed] the prevailing wage for aircraft painters." Id. Here, too, we do not need to expend much to acknowledge that these participating drivers' net pay, inclusive of the Payments, was identical to, or close to, that of other employees who opted out of the Payment Plan. Although those participating received artificially low taxable wages, they were compensated for their hours of work when they participated in the Payment Plan.

Indeed, Werner established this Payment Plan, providing a portion of drivers' pay tax free, so it could compete in the marketplace and provide its drivers similar

---

regular rate under § 207(e)(2) are payments "not made as compensation for hours of work."

benefits in its wages as those employers in its competitive market. The Payments functioned as wages in its drivers' compensation, suggesting, if not establishing, that the Payments were remuneration for employment, not excepted by § 207(e)(2).

We additionally agree with the district court's highlighting of other factors that led to the conclusion that these Payments function as wages including 1) that the form and purpose suggest they were intended to act as remuneration for work performed, 2) the Payments were unrestricted in that the employees could spend the Payments in any manner and were not required to report expenses or provide receipts, and 3) Werner introduced the Payments as a means to attract new employees by maximizing take home pay. Each of these factors additionally establish that the Payments were remuneration for employment rather than reimbursement for expenses. See B&D Contracting v. Pearley, 548 F.3d 338, 343 (5th Cir. 2008) (determining that a per diem payment "played the role of wages" because the payments: were calculated on hours worked; paid in the same paycheck as normal wages; were unrestricted; unrelated to actual costs of meals, lodging, or travel; were paid to all employees without limitation; and constituted almost half of the employee's gross pay).

In addition to providing a benefit of tax free payments based on a reasonable estimation of travel expenses, these Payments clearly serve as wages under the FLSA. These Payments do not fall squarely under the exception described in § 207(e)(2) wherein a payment for traveling expenses previously incurred by an employee in furtherance of his employer's interests is reimbursed and excluded from the regular rate calculation, primarily because these Payments are made as compensation for hours of employment. 29 U.S.C. § 207(e)(2). Under the FLSA, these Payments are thus remuneration for employment that should be included in Werner's minimum wage calculation. The district court did not err in its analysis and we affirm its similar conclusion.

**D.     State Law Claims**

The NWHA requires that each employee entitled to its benefits receive "wages" that are at least at the statutory minimum wage level. Neb. Rev. Stat. § 48-1203. "Wages shall mean all remuneration for personal services, including commissions and bonuses and the cash value of all remunerations in any medium other than cash." Id. § 48-1202(5). The NWPCA, also cited by the class, provides a cause of action for employees to recover unpaid wages. Id. § 48-1231(1). The NWPCA permits an employee to recover wages an employer previously agreed to pay, id., and defines wages as "compensation for labor or services rendered by an employee . . . when previously agreed to and conditions stipulated have been met." Id. § 48-1229(4); Eikmeier v. City of Omaha, 783 N.W.2d 795, 798 (Neb. 2010). On appeal, the class vaguely claims the district court erred in dismissing their state law NWPCA and NWHA claims for the reasons they argue the court erred on their federal claims.

The class's success in their state law claims is dependent upon establishing that the only wage they received was the taxable portion of their pay–the portion exclusive of the Payments. On these facts, the reasoning set out above discussing the matter under the FLSA rubric forecloses the class's state law claims as well. See Logan v. Rocky Mountain Rental, 524 N.W.2d 816, 819 (Neb. Ct. App. 1994) (holding in the similarly applicable context of defining wages for workers' compensation that a per diem payment was a wage, even though not taxed as income, because the driver did not have to account for the payment with receipts or other such proof). For these reasons, we likewise affirm the district court's dismissal of the state law claims.

**III.     CONCLUSION**

For the reasons stated herein, we affirm.

COLLOTON, Circuit Judge, concurring.

On the question of judicial estoppel, the court holds that "Werner's prior representations to the IRS were not clearly inconsistent with those taken here," *ante*, at 7, so estoppel does not apply. As the district court put it, Werner's representations to the IRS concerned the amount of expenses that an employee was reasonably *expected* to incur, while the Department of Labor regulations applicable here required the court to assess whether the company's payments approximated expenses that employees *actually* incurred. R. Doc. 391, at 36. That said, we do not address whether the company's twin positions are sustainable going forward. It presumably will be for the IRS to determine whether to accept future statements by the company about what expenses are expected in light of data showing what expenses were actually incurred during recent periods.

―――――――――――――――――――